1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN TAYLOR and JUSTIN ALICEA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC.,<br><br>Defendant. | Case No.  5:25-cv-00186<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

1    Plaintiffs Kaitlyn Taylor and Justin Alicea (collectively, "Plaintiffs"), on

2    behalf of themselves and all others similarly situated, by and through undersigned

3    counsel, hereby bring this action against Walmart, Inc. ("Defendant"), and upon

4    information and belief and investigation of counsel, allege as follows:

**INTRODUCTION**

6    1.    This is a consumer class action for violations of the California

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"),

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

("UCL"), and breach of express warranties.

10    2.    Defendant manufactures, distributes, advertises, and sells Great Value

Macaroni & Cheese Original Microwavable Cup (the "Product"). The Product's

front label packaging prominently represents that the Product contains "No

artificial flavors" and "No artificial preservatives."

14    3.    This statement is false. The Product is made with "citric acid"—an

artificial preservative and flavor used in food products.

16    4.    Defendant's packaging, labeling, and advertising scheme is intended

to give consumers the reasonable belief that they are buying a premium product

that is free from artificial ingredients.

19    5.    Like other reasonable consumers, Plaintiffs were deceived by

Defendant's unlawful conduct and brings this action individually and on behalf of

all similarly situated consumers to remedy Defendant's unlawful acts.

**JURISDICTION AND VENUE**

23    6.    This Court has original jurisdiction over this action pursuant to 28

U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100

members in the proposed class; (2) members of the proposed class have a different

citizenship from Defendant; and (3) the claims of the proposed class members

exceed $5,000,000 in the aggregate, exclusive of interest and costs. The Product

is sold at numerous retail stores and Plaintiffs are seeking to represent a nationwide

CROSNER LEGAL, P.C.

1

class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiffs seek compensatory and statutory damages, disgorgement and restitution. Plaintiffs also seek punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiffs estimate that the amount in controversy exceeds $5 million.

7.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California (registration number with the California Secretary of State is 1634374), and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Product in California, specifically in this county. The marketing of the Product, including the decision of what to include and not include on the label, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Product to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold a deceptively advertised Product to Plaintiffs and members of the Class in California. By distributing and selling the Product in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Class that Defendant knows is likely to be suffered by Californians.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District

CROSNER LEGAL, P.C.

1    since Plaintiffs purchased the Product within this District.

2                                    **PARTIES**

3        9.    Defendant Walmart, Inc. is a Delaware corporation with its principal

4    place of business in Bentonville, Arkansas. Defendant is registered to do business

5    in California as entity number 1634374. At all times during the class period,

6    Defendant was the manufacturer, distributor, marketer, and seller of the Product.

7        10.    Plaintiff Kaitlyn Taylor purchased the Great Value Macaroni &

8    Cheese Original Microwavable Cup product in the 4-cup and 8-cup varieties

9    several times throughout the class period at a Walmart store located in Hemet,

10   California. Plaintiff Taylor's most recent purchase was in or around October 2024.

11       11.    Plaintiff Justin Alicea purchased the Great Value Macaroni & Cheese

12   Original Microwavable Cup product in the 4-cup variety several times throughout

13   the class period at a Walmart store in Oroville, California. Plaintiff Alicea's most

14   recent purchase was in 2024.

15       12.    When purchasing the Product, Plaintiffs did not expect that

16   Defendant's "No artificial flavors" and "No artificial preservatives"

17   representations on the Product's front label were false. Plaintiffs did not expect

18   Defendant to publicly place deceptive statements about the contents of its Product

19   on the front label of the Product. Plaintiffs saw and relied on the "No artificial

20   flavors" and "No artificial preservatives" claims on the front label of the Product.

21   Plaintiffs would not have purchased the Product, or would have paid less for the

22   Product, had they known that the Product contains an artificial flavoring and

23   preserving ingredient in direct contradiction to the "No artificial flavors" and "No

24   artificial preservatives" statements on the Product's front label. As a result,

25   Plaintiffs suffered injury in fact when they spent money to purchase the Product

26   they would not have purchased, or would have paid less for, absent Defendant's

27   misconduct.

28       13.    Plaintiffs desire to, and would, purchase the Product again if the label

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

of the Product was accurate and if the Product truthfully contained "No artificial flavors" and "No artificial preservatives." However, as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Product's labeling when deciding in the future whether to purchase the Product. Considering that the Plaintiffs continue to see the Product for sale, they are at an imminent risk of future injury.

**FACTUAL ALLEGATIONS**

**"NO ARTIFICIAL FLAVORS" AND "NO ARTIFICIAL PRESERVATIVES" IS PROMINENTLY DISPLAYED ON THE FRONT LABEL OF THE PRODUCT**

14.    The front label for the Product prominently states that the Product contains "No artificial flavors" and "No artificial preservatives" thereby misleading reasonable consumers into believing that the Product is free from artificial flavors and preservatives. However, the Product contains the artificial flavoring and preservative ingredient citric acid.

15.    Below are true and correct copies of the Product's front-label packaging and labeling:



4

CLASS ACTION COMPLAINT

16.    The rear label of the Product's packaging reveals that the Product contains citric acid, an artificial flavoring and preservative ingredient:





## THE CITRIC ACID IN THE PRODUCT IS ARTIFICIAL

17.    Defendant uses artificial manufactured citric acid in the Product.[1] Commercial food manufacturers use a synthetic form of citric acid that is derived from heavy chemical processing.[2] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[3] Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[4] Defendant does not use natural citric acid extracted from fruit in the Product. This is because "[a]pproximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919." *Id*. As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is *not* the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[5]

[1] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol. Rep. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 Mycobiology 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[3] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* Frontiers in Life Science, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[4] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol. Rep. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/
[5] *Id*. (emphasis added)

CROSNER LEGAL, P.C.

18.   A technical evaluation report for citric acid compiled by the United States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[6]

19.   As one of the USDA AMS reviewers commented:

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be ***classified as synthetic***."[7]

20.   When asked "Is this substance Natural of Synthetic?" USDA AMS reviewers state: "synthetic."[8]

21.   The FDA has determined that manufactured citric acid is not natural; it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.[9]

---

[6] **Exhibit D** at page 6.

[7] **Exhibit D** at page 5 (emphasis added)

[8] **Exhibit D** at pages 4-5.

[9] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.

22.    The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Product is produced through chemical solvent extraction and contains residues of those chemical solvents.

23.    The *Toxicology Reports Journal* study explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[10] The study further explains:

> "Given the thermotolerance of A. niger, there is great potential that byproducts of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies" *Id*.

24.    The EPA provides the following simply schematic of the manufacturing process for citric acid which includes the use of synthetic solvents

---

[10] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* Toxicol. Rep. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

CLASS ACTION COMPLAINT

like Sulfuric Acid:[11]



25.    Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[12] This is the reason why Defendant indicates in tiny print on the back of the Product packaging that the Product "contains bioengineered food ingredients." *See supra*, ¶ 14.

26.    Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of Product containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[13]

---

[11] https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf.

[12] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source (Last visited May 15, 2024).

[13] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

27.    Clinical nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[14] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the *Aspergillus niger* used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."

28.    "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis." *Id.*

29.    "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001)."[15]

30.    Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops (dashed lines) and their locations within the cellular structure of *Aspergillus niger*:[16]

---

[14] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

[15] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. FRONTIERS IN LIFE SCIENCE, 8(3), 271–283, *available at* https://doi.org/10.1080/21553769.2015.1033653

[16] *Id.* at Figure 3.



31.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[17] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[18] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[19]

32.    Below are images of the chemical process used to create citric acid

---

[17] *Artificial,* DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[18] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

[19] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

CLASS ACTION COMPLAINT

for use in food – a process that is visibly artificial:






33.    Citric acid acts as an artificial flavoring and preserving agent when added to food products, including the Products at issue.[20] Citric acid has a sour, acidic, and slightly tart flavor. *Id.*

34.    The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21

---

[20] https://www.webstaurantstore.com/blog/3350/what-is-citric-acid.html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and%20acidic.

CROSNER LEGAL, P.C.

C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[21]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

35.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain Product were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[22]

36.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common ***chemical*** preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[23]

**REASONABLE CONSUMERS ARE DECEIVED AND SUFFERED ECONOMIC INJURY**

37.     Consumers, like Plaintiffs, relied on Defendant's "No artificial flavors" and "No artificial preservatives" labeling statements. These statements are material to reasonable consumers.

38.     "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the Product as closely tied to health … 84 percent of

---

[21] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[22] *See* **Exhibit A** at page 2 (highlighted).

[23] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)

American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[24]

39.    Plaintiffs and putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent.

40.    Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Product and/or the price premium associated with the deceptive statements on the Product's label. Consumers, including Plaintiffs, would not have purchased Defendant's Product, or would have paid less for the Product, if they had known the Product actually contains an artificial flavoring and preservative ingredient.

## NO ADEQUATE REMEDY AT LAW

41.    Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

42.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product,

---

[24] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, MINTEL (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1 across a multitude of media platforms, including the product label, packaging, and

2 online advertisements, over a long period of time, in order to gain an unfair

3 advantage over competitor products. Plaintiffs and class members may also be

4 entitled to restitution under the UCL, while not entitled to damages under other

5 causes of action asserted herein (e.g., the CLRA is limited to certain types of

6 plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or

7 services for personal, family, or household purposes) and other statutorily

8 enumerated conduct).

9   43. A primary litigation objective in this litigation is to obtain injunctive

10 relief in the form of a label or ingredient change. Injunctive relief is appropriate

11 on behalf of Plaintiffs and members of the class because Defendant continues to

12 misrepresent the Product as containing "No artificial flavors" and "No artificial

13 preservatives" when the Product actually contains the artificial flavoring and

14 preservative ingredient citric acid. Injunctive relief is necessary to prevent

15 Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful

16 conduct described herein and to prevent future harm—none of which can be

17 achieved through available legal remedies (such as monetary damages to

18 compensate past harm). Further, a public injunction is available under the UCL,

19 and damages will not adequately benefit the general public in a manner equivalent

20 to an injunction.

21        <u>**CLASS ACTION ALLEGATIONS**</u>

22   44. Plaintiffs bring this action as a class action pursuant to Federal Rules

23 of Civil Procedure on behalf of the following Classes (or alternative Classes or

24 Subclasses):

25  **<u>The Nationwide Class</u>**

26 All U.S. citizens who purchased the Product in their respective state of
  citizenship for personal and household use and not for resale within the

27 applicable statute of limitations and until the date class notice is

28 disseminated.

**The California Subclass**

All California citizens who purchased the Product in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

45.     The Classes and Subclasses described in this complaint will jointly be referred to the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

46.     Plaintiffs and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

47.     Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Product from Defendant.

48.     The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

50.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.  Whether Defendant is responsible for the conduct alleged herein which

CROSNER LEGAL, P.C.

17

1    was uniformly directed at all consumers who purchased the Product;

2    b. Whether Defendant's misconduct set forth in this Complaint

3    demonstrates that Defendant engaged in unfair, fraudulent, or unlawful

4    business practices with respect to the advertising, marketing, and sale of

5    the Product;

6    c. Whether Defendant made misrepresentations concerning the Product

7    that were likely to deceive the public;

8    d. Whether Plaintiffs and the Class are entitled to injunctive relief;

9    e. Whether Plaintiffs and the Class are entitled to money damages and/or

10    restitution under the same causes of action as the other Class Members.

11    51.    Typicality: Plaintiffs are members of the Classes that Plaintiffs seek

12  to represent. Plaintiffs' claims are typical of the claims of each Class Member in

13  that every member of the Class was susceptible to the same deceptive, misleading

14  conduct and purchased the Product. Plaintiffs are entitled to relief under the same

15  causes of action as the other Class Members.

16    52.    Adequacy: Plaintiffs are adequate Class representatives because

17  Plaintiffs' interests do not conflict with the interests of the Class Members

18  Plaintiffs seek to represent; the consumer fraud claims are common to all other

19  members of the Class, and Plaintiffs have a strong interest in vindicating the rights

20  of the class; Plaintiffs have retained counsel competent and experienced in

21  complex class action litigation and Plaintiffs intend to vigorously prosecute this

22  action. Plaintiffs have no interests which conflict with those of the Class. The Class

23  Members' interests will be fairly and adequately protected by Plaintiffs and

24  proposed Class Counsel. Defendant has acted in a manner generally applicable to

25  the Class, making relief appropriate with respect to Plaintiffs and the Class

26  Members. The prosecution of separate actions by individual Class Members would

27  create a risk of inconsistent and varying adjudications.

28    53.    The Class is properly brought and should be maintained as a class

CROSNER LEGAL, P.C.

18

action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

54.    Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1   the members of the Class as a whole, appropriate.

2       55.    Plaintiffs seek preliminary and/or permanent injunctive and equitable

3   relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin

4   and prevent Defendant from engaging in the acts described, and to require

5   Defendant to provide restitution to Plaintiffs and the Class members.

6       56.    Unless the Class is certified, Defendant will retain monies that were

7   taken from Plaintiffs and Class members as a result of Defendant's wrongful

8   conduct. Unless a classwide injunction is issued, Defendant will continue to

9   commit the violations alleged and the members of the Class and the general public

10  will continue to be misled.

**F<small>IRST</small> C<small>LAIM FOR</small> R<small>ELIEF</small>**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq*.**

14      57.    Plaintiffs reallege and incorporate by reference all allegations

15  contained in this complaint, as though fully set forth herein.

16      58.    Plaintiffs bring this claim under the CLRA individually and on behalf

17  of the California Class against Defendant.

18      59.    At all times relevant hereto, Plaintiffs and the members of the Class

19  were "consumer[s]," as defined in California Civil Code section 1761(d).

20      60.    At all relevant times, Defendant was a "person," as defined in

21  California Civil Code section 1761(c).

22      61.    At all relevant times, the Product manufactured, distributed,

23  marketed, advertised, and sold by Defendant constituted "goods," as defined in

24  California Civil Code section 1761(a).

25      62.    The purchases of the Product by Plaintiffs and the members of the

26  Class were and are "transactions" within the meaning of California Civil Code

27  section 1761(e).

28      63.    Defendant disseminated, or caused to be disseminated, through its

C<small>ROSNER</small> L<small>EGAL</small>, P.C.

advertising, false and misleading representations, including the Product's labeling that the Product contained "No artificial flavors" and "No artificial preservatives." Defendant failed to disclose that the Product contains an artificial flavoring and preservative ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Product contains an artificial flavor and preservative to be important to their decision in purchasing the Product. Defendant's representations violate the CLRA in the following ways:

    a. Defendant represented that the Product has characteristics, ingredients, uses, and benefits which it does not have (Cal. Civ. Code § 1770(a)(5));

    b. Defendant represented that the Product is of a particular standard, quality, or grade, which it is not (Cal. Civ. Code § 1770(a)(7));

    c. Defendant advertised the Product with an intent not to sell the Product as advertised (Cal. Civ. Code § 1770(a)(9)); and

    d. Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

64. Defendant violated the CLRA because the Product was prominently advertised as containing "No artificial flavors" and "No artificial preservatives" but the Product contains an artificial flavor and preservative ingredient called citric acid. Defendant knew or should have known that consumers would want to know that the Product contained an artificial flavor and preservative.

65. Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class members' rights and were wanton and malicious.

66. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Product has characteristics which it does not have.

67. Pursuant to California Civil Code section 1782(d), Plaintiffs and the

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

68.    Pursuant to California Civil Code section 1782, Plaintiffs notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

69.    More than thirty days have passed since Plaintiffs sent Defendant a CLRA letter and Defendant has failed to take the corrective action described in Plaintiffs' letter. Wherefore, Plaintiffs seek actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

70.    Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

71.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

72.    Plaintiffs bring this claim under the UCL individually and on behalf of the California Class against Defendant.

73.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

74.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express

and implied warranties. Plaintiffs, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

75.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiffs and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Product contains an artificial flavor and preservative) of which it had exclusive knowledge. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

76.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Product set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Product actually contains no artificial flavors or preservatives.

77.    Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Product. Plaintiffs and the other

CROSNER LEGAL, P.C.

Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

78.    Defendant's wrongful business practices and violations of the UCL are ongoing.

79.    Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

80.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the California Class, seek (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Violation of the False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

81.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

82.    Plaintiffs bring this claim under the FAL individually and on behalf of the California Class against Defendant.

83.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or

24

CROSNER LEGAL, P.C.

which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

84. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

85. As alleged herein, Defendant falsely advertised the Product by falsely representing that the Product contained "No artificial flavors" and "No artificial preservatives" when in fact, the Product contains the artificial flavor and preservative ingredient called citric acid.

86. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased the Product in reliance on Defendant's false and misleading labeling claim that the Product contained no artificial flavors and no artificial preservatives.

87. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

88. Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

89. As a result, Plaintiffs, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

90. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and the Classes, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act

prohibited by law, including those set forth herein.

## FOURTH CLAIM FOR RELIEF

### Breach of Express Warranty

### Cal. Com. Code § 2313(1)

91.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

92.    Plaintiffs bring this claim for breach of express warranty individually and on behalf of all Classes against Defendant.

93.    As the manufacturer, marketer, distributor, and seller of the Product, Defendant issued an express warranty by representing to consumers at the point of purchase that the Product contained "No artificial flavors" and "No artificial preservatives."

94.    Plaintiffs and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Product, including the representation that the Product contained "No artificial flavors" and "No artificial preservatives."

95.    Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class.

96.    In fact, the Product does not conform to Defendant's representations because the Product contains an artificial flavor and preservative ingredient called citric acid. By falsely representing the Product in this way, Defendant breached express warranties.

97.    Plaintiffs relied on Defendant's representations on the Product's label and advertising materials which provide the basis for an express warranty under California law.

98.    As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class were injured because they: (1) paid money for the Product that was not as Defendant represented; (2) were deprived of the benefit of the

CROSNER LEGAL, P.C.

bargain because the Product they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than if Defendant's representations about the characteristics of the Product were truthful.

99.    Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class Members would not have purchased the Product or would not have paid as much as they did for it.

**FIFTH CLAIM FOR RELIEF**

**Breach of Implied Warranty**

**Cal. Com. Code § 2314**

100.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

101.    Plaintiffs bring this claim for breach of implied warranty individually and on behalf of all Classes against Defendant.

102.    Plaintiffs and the Class purchased the Product manufactured, advertised, and sold by Defendant, as described herein.

103.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, misrepresented the characteristics of the Product to Plaintiffs and the Class.

104.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

105.    However, Defendant breached that implied warranty in that the Product did not contain "No artificial flavors" and "No artificial preservatives" as represented. Instead, the Product contains an artificial flavor and preservative ingredient called citric acid.

106.    As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Product did not conform to promises and affirmations

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1  made on the label of the Product.

2      107.   Plaintiffs and the Class have sustained damages as a proximate result

3  of the foregoing breach of implied warranty in the amount of the Product's price

4  premium.

5                        **SIXTH CLAIM FOR RELIEF**

6                        **Negligent Misrepresentation**

7      108.   Plaintiffs reallege and incorporate by reference all allegations

8  contained in this complaint, as though fully set forth herein.

9      109.   Plaintiffs bring this claim for negligent misrepresentation

10  individually and on behalf of all Classes against Defendant.

11      110.   Defendant had a duty to disclose to Plaintiffs and Class Members

12  correct information as to the quality and characteristics of the Product because

13  Defendant was in a superior position than Plaintiffs and Class Members such that

14  reliance by Plaintiffs and Class Members was justified. Defendant possessed the

15  skills and expertise to know the type of information that would influence a

16  consumer's purchasing decision.

17      111.   During the applicable class period, Defendant negligently or

18  carelessly misrepresented, omitted, and concealed from consumers material facts

19  regarding the quality and characteristics of the Product, including the fact that the

20  Product does contain the artificial flavor or preservative ingredient citric acid,

21  despite being advertised as containing "No artificial flavors" and "No artificial

22  preservatives."

23      112.   Defendant made such false and misleading statements and omissions

24  with the intent to induce Plaintiffs and Class Members to purchase the Product at

25  a premium price.

26      113.   Defendant was careless in ascertaining the truth of its representations

27  in that it knew or should have known that Plaintiffs and Class Members would be

28  overpaying for the Product.

       114.   Plaintiffs and Class Members were unaware of the falsity in

28

CLASS ACTION COMPLAINT

Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

115. Plaintiffs and Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

### SEVENTH CLAIM FOR RELIEF

**Intentional Misrepresentation/Fraud**

116. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

117. Plaintiffs bring this claim for intentional misrepresentation individually and on behalf of all Classes against Defendant.

118. Defendant had a duty to disclose to Plaintiffs and Class Members correct information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

119. During the applicable class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including that the Product contains an artificial flavor and preservative ingredient called citric acid, despite the Product's "No artificial flavors" and "No artificial preservatives" advertisement. These representations were material and were uniformly made.

120. As noted in detail above, these representations were false and misleading, as the Product contains the artificial flavor and preservative ingredient citric acid. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

121. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiffs and Class Members to purchase the Product at a premium price, deprive Plaintiffs and Class Members of property or otherwise

CROSNER LEGAL, P.C.

1    causing injury, and thus, Defendant has committed fraud.

2        122.   Defendant's deceptive or fraudulent intent is evidenced by motive

3    and opportunity. Defendant knew that consumers would pay more for a product if

4    they believed it was free from artificial flavors and preservatives. For that reason,

5    Defendant misrepresented the Product so that Defendant could realize greater

6    profits. Defendant knew that consumers would place trust and confidence in its

7    Product's claims and rely thereon in their purchases of the Product.

8        123.   Plaintiffs and the Class Members were unaware of the falsity in

9    Defendant's misrepresentations and omissions and, as a result, justifiably relied on

10   them when making the decision to purchase the Product.

11       124.   As a proximate result of Defendant's intentional misrepresentations,

12   Plaintiffs and the Class were induced to purchase the Product at a premium.

13       125.   Plaintiffs and the Class Members would not have purchased the

14   Product or paid as much for the Product if the true facts had been known.

15       126.   As a result of their reliance, Plaintiffs and Class Members were

16   injured in an amount to be proven at trial, including, but not limited to, their lost

17   benefit of the bargain and overpayment at the time of purchase.

18       127.   Defendant's conduct was knowing, intentional, with malice,

19   demonstrated a complete lack of care, and was in reckless disregard for the rights

20   of Plaintiffs and Class Members Plaintiffs and Class Members are therefore

     entitled to an award of punitive damages.

21                          **REQUEST FOR RELIEF**

22       Plaintiffs, on behalf of themselves and all others similarly situated, request

23   for relief pursuant to each claim as follows:

24       a. Declaring that this action is a proper class action, certifying the Class as

25          requested herein, designating Plaintiffs as the Class Representatives and

26          appointing the undersigned counsel as Class Counsel;

27       b. Ordering restitution and disgorgement of all profits and unjust

28          enrichment that Defendant obtained from Plaintiffs and the Class

members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiffs and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering other relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 23, 2025               **CROSNER LEGAL, P.C.**

By:      */s/ Lilach H. Klein*
Lilach H. Klein

Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com* 9440 Santa
Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

*Attorneys for Plaintiffs and the Proposed Class*

1   <u>**Civil Code Section 1780(d) Venue Affidavit**</u>

2       I am an attorney duly licensed to practice before all of the courts of the State

3   of California. I am one of the counsel of record for Plaintiffs. This declaration is

4   made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

5   Defendant has done, and is doing business in California, including in this District.

6   Such business includes the marketing, promotion, distribution, and sale of the

7   Product. Plaintiff Taylor purchased the Product at issue in this District.

8

9       I declare under penalty of perjury under the laws of the State of California

10   and the United States that the foregoing is true and correct.

11

12       Executed on January 23, 2025 in Sacramento, California.

13

14       Crosner Legal, P.C.

15       By:   */s/  Lilach H. Klein*
16             LILACH H. KLEIN

17       9440 Santa Monica Blvd. Suite 301
18       Beverly Hills, CA 90210
19       Tel: (866) 276-7637
         Fax: (310) 510-6429
20       lilach@crosnerlegal.com

21       *Attorneys for Plaintiffs and the Proposed*
22       *Class*

23

24

25

26

27

28

CLASS ACTION COMPLAINT