Monica Frascona (SBN 242308)
mfrascona@foleyhoag.com
FOLEY HOAG LLP
4643 South Ulster Street
Suite 970
Denver, Colorado 80237
Tel: (720) 782-5075
Fax: (617) 832-7000

August T. Horvath (*pro hac vice* motion
forthcoming) (NYS 2833234)
ahorvath@foleyhoag.com
FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel: (212) 812-0400
Fax: (212) 812-0399

*Attorneys for Defendant*
*Walmart Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN TAYLOR and JUSTIN ALICEA, *individually, and on behalf of those similarly situated,*<br><br>                                    Plaintiffs,<br><br>    v.<br><br>WALMART INC.,<br><br>                                    Defendant. | No. 5:25-CV-00186-KK-SHK<br><br>**DEFENDANT WALMART INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: May 8, 2025<br>Time: 9:30 AM<br>Judge: Hon. Kenly K. Kato<br>Place: George R. Brown, Jr. United States Courthouse, 3470 12th Street, 3rd Floor, Courtroom 3, Riverside, CA 92501<br><br>Complaint Filed: January 23, 2025<br>Trial Date: None Set |

<u>Table of Contents</u>

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT .........................................................................................................4

    I.     Legal Standard............................................................................................4

    II.    Plaintiffs Have Not Pled that Citric Acid In the Products Is an Artificial Flavor or an Artificial Preservative ...................................6

    III.   Plaintiffs Have Not Plausibly Alleged That Defendant's Labeling Is Misleading to Reasonable Consumers ...........................9

        a.     Plaintiffs Have Not Plausibly Alleged that Citric Acid Fermented Using *Aspergillus Niger* Is Artificial.....................10

        b.     Plaintiffs Have Not Alleged Using Citric Acid Produced with *Aspergillus Niger* Would Deceive Reasonable Consumers ...........................................................14

    II.    Plaintiffs Lack Standing Because They Fail to Allege Actual Reliance ...................................................................................................18

    IV.   Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law .........................................................................................................20

    V.    Plaintiffs Cannot State a Claim for Misrepresentation or Fraud........................................................................................................20

    VI.   Plaintiffs Lack Standing to Seek Injunctive Relief...............................21

    VII.  Plaintiffs Cannot Bring a Nationwide Class Action Based on the Laws of other States ..................................................................22

CONCLUSION ....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arabian v. Organic Candy Factory*,
    No. 2:17-cv-05410, 2018 U.S. Dist. LEXIS 45833 (C.D. Cal. Mar.
    19, 2018) ..................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................4, 5

*Baines v. Nature's Bounty (NY), Inc.*,
    No. 23-710-cv, 2023 U.S. App. LEXIS 32630 (2d Cir. Dec. 11,
    2023) ...............................................................................................*passim*

*Bates v. UPS*,
    511 F.3d 974 (9th Cir. 2007) ....................................................................4

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4

*Birdsong v. Apple*,
    590 F.3d 955 (9th Cir. 2009) ..................................................................19

*Campion v. Old Republic Home Protections Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012)...................................................22

*Cansino v. Bank of Am.*,
    224 Cal. App. 4th 1462 (Ct. App. 2014) ................................................21

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007)......................................................22

*Chapman v. Pier 1 Impos. Inc.*,
    631 F.3d 939 (9th Cir. 2011) ..................................................................21

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................21

*Cohen v. Ainsworth Pet Nutrition LLC*,
No. 2:20-cv-05289-MCS-AS, 2020 U.S. Dist. LEXIS 246315
(C.D. Cal. Oct. 26, 2020) ...................................................................13

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ..........................................................19

*Figy v. Frito-Lay N. Am., Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014)........................................6, 12, 13

*Forouzesh v. Starbucks Corp.*,
No. CV 16-3830 PA, 2016 U.S. Dist. LEXIS 111701 (C.D. Cal.
Aug. 19, 2016), *aff'd*, 714 F. App'x 776 (9th Cir. 2018) ...................10

*George v. Starbucks Corp.*,
No. 19-cv- 6185, 2020 U.S. Dist. LEXIS 217016 (S.D.N.Y. Nov.
19, 2020) ............................................................................................17

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006) ...........................................................21

*Harris v. McDonald's Corp.*,
No. 20-cv06533-RS, 2021 U.S. Dist. LEXIS 103615 (Mar. 24,
2021) ..................................................................................................10

*Hawkins v. Coca-Cola Co.*,
654 F. Supp. 3d 290 (S.D.N.Y. 2023) ..................................................9

*Hindsman v. GM LLC*,
No. 17-CV-05337-JSC, 2018 U.S. Dist. LEXIS 92319 (N.D. Cal.
June 1, 2018)......................................................................................22

*Indiviglio v. B&G Foods, Inc.*,
No. 22 CV 9545, 2023 U.S. Dist. LEXIS 231477 (S.D.N.Y. Dec.
29, 2023) ..............................................................................................8

*Jackson v. General Mills, Inc.*,
No. 18-cv-2634-LAB, 2019 U.S. Dist. LEXIS 162447 (S.D. Cal.
Sept. 20, 2019) ...................................................................................21

*Johnson v. Nissan N. Am., Inc.*,
272 F. Supp. 3d 1168 (N.D. Cal. 2017)..............................................22

*Joslin v. Clif Bar & Co.*,
   No. 4:18-cv-04941-JSW, 2019 U.S. Dist. LEXIS 192100 (N.D.
   Cal. Aug. 26, 2019)......................................................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................5, 9

*Kerkorian v. Samsung Elecs. Am., Inc.*,
   No. 1:18-cv-00870-DAD-SKO, 2019 U.S. Dist. LEXIS 218434
   (E.D. Cal. Dec. 18, 2019) ...............................................................................9

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ..................................................................................19

*Liou v. Organifi, LLC*,
   491 F. Supp. 3d 740 (S.D. Cal. 2020)...........................................................20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).......................................................................................18

*Manderville v. PCG & S Grp., Inc.*,
   146 Cal. App. 4th 1486 (Ct. App. 2007) .......................................................21

*McGinity v. P&G*,
   69 F.4th 1093 (9th Cir. 2023) ..................................................................16, 20

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ...............................................................10, 16, 20

*Myers v. Wakefern Food Corp.*,
   No. 20-CV-8470, 2022 U.S. Dist. LEXIS 35981 (S.D.N.Y. Mar. 1,
   2022) ...............................................................................................................9

*Nacarino v. Kashi Co.*,
   584 F. Supp. 3d 806 (N.D. Cal. 2022), *aff'd*, 77 F.4th 1201 (9th
   Cir. 2023) .......................................................................................................12

*Newton v. Kraft Heinz Foods Co.*,
   No. 16 CV 04578 (RJD)(RLM), 2018 U.S. Dist. LEXIS 241406
   (E.D.N.Y. Dec. 18, 2018) ..............................................................................18

*Osborne v. Kraft Foods Grp., Inc.*,
   No. 15-cv-02653-VC (N.D. Cal. Oct. 15, 2015) ...........................................7, 8

*Pelayo v. Conagra Brands, Inc.*,
  No. 23-cv-05833-JD, 2024 U.S. Dist. LEXIS 134964 (N.D. Cal.
  May 2, 2024)....................................................................................................1, 7, 8

*Pelayo v. Nestle USA, Inc.*,
  989 F. Supp. 2d 973 (C.D. Cal. 2013)....................................................13, 17

*Podpeskar v. Dannon Co.*,
  No. 16-cv-8478 (KBF), 2017 U.S. Dist. LEXIS 198948 (S.D.N.Y.
  Dec. 3, 2017).............................................................................................18

*Prescott v. Nestle USA, Inc.*,
  No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261 (N.D. Cal.
  June 4, 2020)............................................................................................21

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461
  (C.D. Cal. Oct. 25, 2012).........................................................................18

*Robie v. Trader Joe's Co.*,
  No. 20-7355, 2021 U.S. Dist. LEXIS 117336 (N.D. Cal. June 14,
  2021) ...........................................................................................................6

*Roffman v. Perfect Bar, LLC*,
  No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal.
  Sep. 2, 2022) ...............................................................................................12

*Rooney v. Cumberland Packing Corp.*,
  No. 12-CV-0033-H (DHB), 2012 U.S. Dist. LEXIS 58710 (S.D.
  Cal. Apr. 16, 2012) ...................................................................................18

*Ross v. Sioux Honey Ass'n*,
  No. C-12-1645 EMC, 2013 U.S. Dist. LEXIS 618 (N.D. Cal. Jan.
  14, 2013).....................................................................................................18

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
  545 F.3d 1220 (9th Cir. 2008) ..................................................................18

*Scheibe v. Performance Enhancing Supplements, LLC*,
  No. 3:23-cv-00219, 2023 U.S. Dist. LEXIS 97796 (C.D. Cal. June
  5, 2023) .......................................................................................................5

*Schmier v. U.S. Court of Appeals for 9th Circuit*,
279 F.3d 817 (9th Cir. 2002) ..................................................................18

*Snarr v. Cento Fine Foods Inc.*,
No. 19-CV-02627-HSG, 2019 U.S. Dist. LEXIS 220063 (N.D. Cal. Dec. 23, 2019) ......................................................................22

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...................................................................5

*Swartz v. Coca-Cola Co.*,
No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246 (N.D. Cal. July 27, 2023).........................................................................9

*Tarzian v. Kraft Heinz Foods Co.*,
No. 18 C 7148, 2019 U.S. Dist. LEXIS 175670 (N.D. Ill. Oct. 10, 2019) ...............................................................................7, 8

*Trammell v. KLN Enterprises, Inc.*,
No. 3:23-cv-1884-H-JLB, 2024 U.S. Dist. LEXIS 73133 (S.D. Cal. Apr. 22, 2024), *motion for reconsideration denied* (May 20, 2024)......2, 5, 6, 21

*Valencia v. Snapple Bev. Corp.*,
No. 23-CV-1399, 2024 U.S. Dist. LEXIS 48493 (S.D.N.Y. Mar. 18, 2024) ................................................................1, 7, 9

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) .................................................................5

*Viggiano v. Hansen Natural Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ...............................................4, 6

*Watkins v. MGA Entm't., Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021).....................................................5

*Weiss v. Trader Joe's Co.*,
838 F. App'x 302 (9th Cir. 2021) ..........................................................20

*Zahora v. Orgain LLC*,
No. 21 C 705, 2021 U.S. Dist. LEXIS 213525 (N.D. Ill. Nov. 4, 2021) ....................................................................................17

**Statutes**

Cal. Com. Code § 2314(2)(f) ...................................................................20

**Other Authorities**

7 C.F.R. § 205.605(a)...........................................................................11

21 C.F.R. § 101.22(a)(3) .....................................................................12

21 C.F.R. § 184.1033(a)........................................................................11

I. Sweis & B. Cressey, *Potential role of the common food additive
    manufactured citric acid in eliciting significant inflammatory
    reactions contributing to serious disease states,* Toxicology Rep.,
    808 (2018) ..........................................................................11

Fed. R. Civ. P. 9(b) ...............................................................................5

1

## <u>INTRODUCTION</u>

Plaintiffs allege that Defendant Walmart Inc. ("Walmart") misrepresented its Great Value® Macaroni and Cheese Original Microwavable Cups 4- and 8-Packs (the "Products"). Specifically, they allege that the "No artificial flavors" and "No artificial preservatives" labels are misleading due to the presence of one listed ingredient in those Products, "citric acid," which Plaintiffs allege in a conclusory fashion is used in an artificial form to flavor and preserve the Products. The Complaint does not allege any specifics about the derivation of the citric acid Walmart uses in the Products, and relies on purported general industry practice to claim baselessly that the citric acid used in the Products is produced in the same fashion. Based on these allegations, Plaintiffs assert that Defendant's labeling gives rise to claims for violation of the CLRA, unfair competition law, false advertising law, breach of express and implied warranty, negligent misrepresentation, and intentional misrepresentation/fraud. Plaintiffs also seek injunctive relief. The Complaint, however, is subject to dismissal for several reasons.

Courts routinely dismiss attorney-driven mislabeling suits with similar claims regarding "no artificial flavors" and/or "no artificial preservatives" labels as Plaintiffs contest in this case. For example:

- *Pelayo v. Conagra Brands, Inc.*, No. 23-cv-05833-JD, 2024 U.S. Dist. LEXIS 134964, at *2 (N.D. Cal. May 2, 2024) (dismissing citric acid claims brought by the same counsel as the instant case because plaintiffs did not plausibly allege that the form of citric acid used by Conagra is artificial).
- *Valencia v. Snapple Bev. Corp.*, No. 23-CV-1399, 2024 U.S. Dist. LEXIS 48493 (S.D.N.Y. Mar. 18, 2024) (dismissing citric acid claims because plaintiff did not adequately connect her allegations about modern citric acid production to the citric acid in the products).

1
2
3
4
5
6
7

- *Trammell v. KLN Enterprises, Inc.*, No. 3:23-cv-1884-H-JLB, 2024 U.S. Dist. LEXIS 73133, at \*11-12 (S.D. Cal. Apr. 22, 2024), *motion for reconsideration denied* (May 20, 2024) (dismissing malic acid claims because plaintiff failed to allege "factually substantiated allegations that [the product] contains artificial malic acid," and the naturally flavored label was not misleading because "nowhere" on the label did it state that the food was "all natural," "100% natural," or "free of artificial ingredients").

8
9

Plaintiffs' claims fare no better in this suit than the claims in the above listed cases. This Court should dismiss Plaintiffs' lawsuit with prejudice.

10

## BACKGROUND

11
12
13
14

Walmart sells Macaroni and Cheese Original Microwavable Cups under its Great Value® brand.  The front label of these Products state, amongst other things, "no artificial preservatives" and "no artificial flavors."  As noted in the ingredient statement on the back of the packaging, the Products contain citric acid.

15
16
17
18

Plaintiffs base their allegations entirely on purported general industry practice, alleging that the citric acid used in the Products is made via a fermentation process involving a mold, *Aspergillus niger*.  Plaintiffs allege that this process yields an artificial citric acid.

19
20
21
22
23
24
25
26
27

Even taking Plaintiffs' allegations as true, *arguendo*, the citric acid in the Products is a natural flavor, conforming exactly to the FDA's regulatory definition of "natural flavors" at 21 C.F.R. § 101.22(a)(3) as "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof."  The citric acid in the Products is made from sugar cane and/or beet juice (the "vegetable juice … or similar plant material") which

28

DEF.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. TO DISMISS COMPLAINT: CASE NO. 5:25-CV-00186-KK-SHK

has been fermented (is a "fermentation product[] thereof").  All fermentation, by definition, employs some microorganisms such as mold or bacteria to perform the desired chemical reactions.  The involvement of such microorganisms is thus built into the FDA regulatory definition, as well as the reasonable consumer understanding of a natural flavor.  Though the FDA has not defined "natural preservative," there is no reason to think "natural" as used to modify "preservative" would be defined any differently than when used to modify "flavor."

The specific microorganisms used in the fermentation of any natural food are seldom appetizing in themselves, but this is immaterial, because they are not part of the food.  They are employed to transform the base of the food – here, sugar cane and/or beet juice – through the natural process of fermentation, and are filtered or otherwise excluded from the final product.  The Complaint contains no allegation, as opposed to innuendo, suggesting that the Products ever have been or could be contaminated with the mold used to ferment the citric acid they contain.

"Molds" are microscopic fungi that occur in nature.  Assuming *arguendo* that the mold employed in making the citric acid in the Products is *Aspergillus niger*, Plaintiffs misleadingly call this a type of "black mold" in the Complaint, alluding to health concerns about black mold reported in the press.  The "black mold" that is the subject of such concerns is the different *stachybotrys chartarum* mold sometimes found in drywall and wallpaper, which can be harmful when ingested.  Throughout the Complaint, Plaintiffs use alarmist obfuscation and sleight-of-hand to portray the ordinary fermentation process as if it were something dangerous or unnatural.  Plaintiffs break down the chemical reactions of fermentation into numerous discrete steps, as if the complexity of a natural chemical process makes something artificial.  They feature an image of a manufacturing plant, with no indication that it has any relationship to the Products

or Defendant, as if the number of pipes and valves needed to produce something in commercial quantities makes it artificial.  All of Plaintiffs' factual allegations concerning the citric acid in the Products boil down to the words: "It's fermented." Plaintiffs hope to construct a case by having the fact-finder be alarmed or just "grossed out" by their characterization of the fermentation process.  All fear-mongering and "ick"-mongering aside, fermentation is a natural process, and citric acid obtained by fermenting sugar cane and beet juice not only conforms exactly to the FDA definition of a natural flavor, but is also a natural flavor and natural preservative in the eyes of any reasonable consumer.

## ARGUMENT

### I.    Legal Standard

Standing.  A party may contest subject matter jurisdiction based on lack of standing pursuant to Rule 12(b)(1), and plaintiffs always have the burden to establish standing.  *See Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

Failure to state a claim.  A complaint must be dismissed under Rule 12(b)(6) if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 883-84 (C.D. Cal. 2013) (quoting *Iqbal*, 556 U.S. at 678).  Facts indicating the "mere possibility of misconduct" fall short of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 678. "[L]abels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" do not suffice; nor do "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court also need not accept unwarranted deductions of fact or unreasonable inferences and need not credit contradictory allegations.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Determining whether

1  allegations amount to a "plausible" claim is a "context-specific task that requires
2  the reviewing court to draw on its judicial experience and common sense." *Iqbal*,
3  556 U.S. at 669.

4        Pleading fraud.  Claims sounding in fraud, like Plaintiffs' claims here, must
5  also meet Rule 9(b)'s particularity requirements.  Fed. R. Civ. P. 9(b); *Kearns v.*
6  *Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009); *Arabian v. Organic Candy*
7  *Factory*, No. 2:17-cv-05410, 2018 U.S. Dist. LEXIS 45833, at *8-11 (C.D. Cal.
8  Mar. 19, 2018) (Rule 9(b) applied to all Plaintiffs' claims, including UCL, FAL,
9  CLRA, express warranty, implied warranty, fraud, intentional misrepresentation,
10 negligent misrepresentation, and unjust enrichment).  Rule 9(b) requires not only
11 that plaintiffs identify with particularity the advertising on which they supposedly
12 relied ("'the who, what, when, where and how' of the misconduct charged"), *Vess*
13 *v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)), but also that they
14 "allege specific facts showing that [they] relied on the alleged misrepresentations
15 or omissions." *Watkins v. MGA Entm't., Inc.*, 550 F. Supp. 3d 815,  833 (N.D. Cal.
16 2021).  Prior cases have been dismissed because the plaintiff did not meet the Rule
17 9(b) standard in describing the laboratory testing that purportedly supported
18 allegations that a product contains the synthetic form of an ingredient.  *See Scheibe*
19 *v. Performance Enhancing Supplements, LLC*, No. 3:23-cv-00219, 2023 U.S. Dist.
20 LEXIS 97796 at *7, (C.D. Cal. June 5, 2023).  Another court applied Rule 9(b) to
21 allegedly artificial ingredient claims and dismissed the case because "[p]laintiff's
22 conclusory allegations without more particularity, are a far cry from raising any
23 factually substantiated allegations that [the product] contains artificial malic acid,
24 rather than natural malic acid, and that the malic acid used functions as a flavor."
25 *KLN Enters.*, 2024 U.S. Dist. LEXIS 73133, at *11.

**II.**     **Plaintiffs Have Not Pled that Citric Acid In the Products Is an Artificial Flavor or an Artificial Preservative**

Plaintiffs' lawsuit is premised on the allegation that the citric acid in Defendant's Products acts as an "artificial flavor" and "artificial preservative." *See, e.g.*, Compl. ¶ 14.  To plausibly plead this allegation, Plaintiffs must establish that the citric acid in the Products is (1) artificial and (2) acts as a flavor and preservative.  *See Viggiano*, 944 F. Supp. 2d at 889 ("[C]ourts have differentiated between unnatural ingredients and unnatural flavors, finding that FDA regulations permit a food product to be labeled as containing 'natural flavors' even if the ingredients themselves are not all natural.").

Courts in this Circuit agree that "conclusory allegations that the flavoring is artificial are insufficient to state a claim."  *Robie v. Trader Joe's Co.*, No. 20-7355, 2021 U.S. Dist. LEXIS 117336, at *13 (N.D. Cal. June 14, 2021); *see also, e.g.*, *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) (dismissing false advertising claim where the plaintiff "provide[d] no detail whatsoever about how or why the offending ingredients are unnatural").

Plaintiffs fail to plausibly allege the necessary factual basis for their claims that the citric acid in the Products is artificial.  Plaintiffs allege no facts specific to the citric acid used in the Products.  Specifically, in the 20 paragraphs making up the "Citric Acid in the Product is Artificial" section of the Complaint, not a single paragraph or sentence plausibly states the citric acid specifically used by Defendant in the Products is artificial.  This entire section consists of conclusory statements based on an allegedly common industry practice, which Plaintiffs baselessly link to the Products by citing articles and blogs that do not mention the Products.  *See* Compl. ¶ 17, 25, 33.  The Complaint alleges that, while citric acid exists and may be extracted from fruits (Compl. ¶ 18), nearly all commercial operations use citric acid "using" a mold called *Aspergillus niger*.  (Plaintiffs

neglect to mention, but presumably know, that citric acid fermented with the aid of *Aspergillus niger* actually comes from vegetable extracts such as sugar cane and beet juice, not from the mold itself.)  The allegations in the Complaint do not provide any account of the production of the citric acid specifically used in the Products.

Plaintiffs' conclusory allegations and speculation cannot state a plausible claim for relief.  Plaintiffs must plead factual content (not conclusions) that demonstrate Defendant uses artificial citric acid in the Products.  Plaintiffs' factual allegations in the Complaint do not establish that the citric acid in the Products they purchased was produced in any particular way, let alone in a way that makes it "artificial."  District courts in the Ninth Circuit and others have dismissed similarly generic allegations that failed to make any specific allegation about the citric acid used in the challenged products.  *See, e.g.*, *Pelayo.*, 2024 U.S. Dist. LEXIS 134964, at *2; *Osborne v. Kraft Foods Grp., Inc.*, No. 15-cv-02653-VC, slip op. at 5–6 (N.D. Cal. Oct. 15, 2015); *Tarzian v. Kraft Heinz Foods Co.,* No. 18-cv-7148, 2019 U.S. Dist. LEXIS 175670, at *2-4 (N.D. Ill. Oct. 10, 2019) (rejecting as baseless plaintiff's allegation that food must have artificial citric acid because it was more "economically viable" to do so and was "common industry practice" for failing "to draw a connection between the common industry practice and the actual practice used by Kraft"); *Valencia v. Snapple Bev. Corp.*, No. 23-CV-1399 (CS), 2024 U.S. Dist. LEXIS 48493, at *17 (S.D.N.Y. Mar. 18, 2024) (dismissing complaint because plaintiff did not adequately connect her allegations about modern citric acid production to the citric acid in the products at issue).

*Osborne* dismissed a complaint that failed to "specify whether all citric acid is unnatural or some types of citric acid is unnatural" or "what type of citric acid Kraft uses in its Capri Sun drinks." Slip op. at 5–6. Similarly, *Tarzian* dismissed allegations that the defendant's products contained "industrially manufactured

citric acid" that "is usually produced through the industrial fermentation process" because they did "not link the allegedly artificial citric acid to the citric acid used" by the defendant. 2019 U.S. Dist. LEXIS 175670, at *11. The *Tarzian* court observed that allegations about "the practices commonly used to manufacture citric acid" do not provide a viable link to the defendant's products or support the claim that it is artificial. *Id.* Lastly, *Pelayo* dismissed similar "wholly conclusory" citric acid claims because "plaintiffs have not provided enough facts to plausibly allege that the form of citric acid used by Conagra is artificial" and the cited evidence was "silent on what type of citric acid Conagra uses."  *Pelayo*, 2024 U.S. Dist. LEXIS 134964, at *2.

As in *Pelayo*, *Osborne* and *Tarzian*, Plaintiffs' factual allegations do not establish that the citric acid in the Products is "artificial," which provides an independent basis to dismiss the claims.  The closest the Complaint gets to linking the vague allegations to the Products or Defendant is Paragraph 17, where Plaintiffs baselessly and conclusorily claim the Products contain artificial citric acid.  *See* Compl. ¶ 17 (discussing commercial food manufacturers generally and baselessly claiming "Defendant uses artificial manufactured citric acid in the Product" and "Defendant does not use natural citric acid extracted from fruit in the Product").  But to "satisfy the pleading standards, Plaintiffs need to draw a connection between the common industry practice and the actual practice used by [Walmart]." *Tarzian,* 2019 U.S. Dist. LEXIS 175670, at *11.  Just like the allegations highlighted in *Pelayo, Osborne,* and *Tarzian*, neither the allegations nor the articles in Plaintiffs' Complaint "link the allegedly artificial citric acid to the citric acid used" by Walmart.  *Id.*; *see also Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 U.S. Dist. LEXIS 231477, at *4 (S.D.N.Y. Dec. 29, 2023) (granting motion to dismiss where plaintiff failed to adequately allege "that the presence of citric acid renders the phrase 'All Fruit' false or misleading").

1   Even cases where plaintiffs alleged that laboratory analysis had shown that
2   the product contained the artificially rather than naturally produced version of an
3   ingredient, the court found these allegations to be "a far cry from raising 'any
4   factually substantiated allegations' that the Product contains [the artificial form of
5   the ingredient], rather than [the] natural [form]." *Hawkins v. Coca-Cola Co.*, 654
6   F. Supp. 3d 290, 306 (S.D.N.Y. 2023) (regarding malic acid); *Myers v. Wakefern
7   Food Corp.*, No. 20-CV-8470, 2022 U.S. Dist. LEXIS 35981, at *12 (S.D.N.Y.
8   Mar. 1, 2022) (Plaintiff alleged product was subjected to lab test but did not
9   "provide any details whatsoever about [what] this laboratory test entailed.").
10  Plaintiffs here do not even allege they tested the Products or did any diligence into
11  these specific Products or Defendant.  "If plaintiffs who actually tested the product
12  did not provide sufficient factual content to render it plausible that the product
13  contained artificially derived compounds, Plaintiffs' bare claim here that citric acid
14  today is made from mold rather than citrus fruit cannot, absent any allegation
15  specific to the Products and absent any basis for her assertion about all citric acid,
16  be sufficient."  *Valencia*, 2024 U.S. Dist. LEXIS 48493 at *18.

17      Because Plaintiffs' Complaint fails to plead the essential detail necessary to
18  sustain their claims, especially given that this Complaint sounds in fraud and
19  therefore Rule 9(b)'s heightened pleading standard applies, it must be dismissed in
20  its entirety. *See, e.g., Kerkorian v. Samsung Elecs. Am., Inc.*, No. 1:18-cv-00870-
21  DAD-SKO, 2019 U.S. Dist. LEXIS 218434, at *8 (E.D. Cal. Dec. 18, 2019) (citing
22  *Kearns*, 567 F.3d at 1125); *Swartz v. Coca-Cola Co.*, No. 21-cv-04643-JD, 2023
23  U.S. Dist. LEXIS 130246, at *9-10 (N.D. Cal. July 27, 2023) (dismissing
24  complaint that failed to "provide facts supporting [its] allegations").

25  **III.    Plaintiffs Have Not Plausibly Alleged That Defendant's Labeling
26          Is Misleading to Reasonable Consumers**
27      The Ninth Circuit has made clear that the reasonable consumer test applies

to claims under the California consumer protection statutes, and governs all of Plaintiffs' claims here.  Thus, Plaintiffs must "show that members of the public are likely to be deceived." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citations omitted).  A plaintiff's allegation that he was personally deceived is insufficient to show that reasonable consumers are likely to be misled. *Harris v. McDonald's Corp.*, No. 20-cv06533-RS, 2021 U.S. Dist. LEXIS 103615, at *5 (Mar. 24, 2021) (plaintiff cannot proceed "simply by asserting her own belief and conclusions about consumers' beliefs").  Plaintiffs must allege more than "a mere possibility" that a label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). They instead must demonstrate that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Forouzesh v. Starbucks Corp.*, No. 16-cv-3830 PA, 2016 U.S. Dist. LEXIS 111701, at *11 (C.D. Cal. Aug. 19, 2016) (dismissing express warranty claim where allegations were "inconsistent with the understanding of a reasonable consumer"), *aff'd*, 714 F. App'x 776 (9th Cir. 2018).

### a. Plaintiffs Have Not Plausibly Alleged that Citric Acid Fermented Using *Aspergillus Niger* Is Artificial

Even if Plaintiffs had pled plausibly that the citric acid used in the Products is produced using the method that they describe – which they have not – Plaintiffs cannot plausibly allege that citric acid produced using that method is "artificial." Although Plaintiffs' description of a common method for making natural citric acid in commercial quantities is so loaded with bias, omissions, misstatements, and irrelevant material as to be nearly unrecognizable, at bottom it describes a process in which a sweet plant extract, such as sugar cane or beet juice, is fermented by introducing a mold such as *Aspergillus niger*, which converts sugars in the plant

1  extract into citric acid as part of its metabolism.

2       Molds are microscopic natural fungi that live on plant or animal matter.

3  Molds occur and exist naturally, and some of them perform fermentation as part of

4  their natural process.  All fermentation involves the activity of some kind of

5  microorganism in this way.  The resulting citric acid is molecularly identical to

6  citric acid from fruits.  As Plaintiffs' cited materials note, "[t]he molecular formula

7  of the natural citric acid obtained from lemons and limes and that of [citric acid

8  derived through fermentation] is the same, $C_6H_8O_7$." *See* I. Sweis & B. Cressey,

9  *Potential role of the common food additive manufactured citric acid in eliciting*

10  *significant inflammatory reactions contributing to serious disease states*, 5

11  Toxicology Rep., 808, 809 (2018) (cited in Complaint, n.1, 4, 10).  Production of

12  citric acid via fermentation by *Aspergillus niger* has been used in the food and

13  beverage industry for over 100 years, as recognized by Plaintiffs' cited materials.

14  *See id.* at 808–09 (noting that "citric acid was first isolated by William Scheele in

15  England in 1784 from lemon juice" and that, in 1917, an American chemist

16  "discovered that strains of *Aspergillus niger* provided high yields of citric acid

17  through a fermentation process").

18       Both the FDA and USDA recognize that microbial fermentation is a natural

19  process.  The FDA states " Citric acid . . . is a naturally occurring constituent of

20  plant and animal tissues . . . [and] may be produced by [two other extraction

21  methods] and by the solvent extraction process described in § 173.280 of this

22  chapter for the recovery of citric acid from *Aspergillus niger* fermentation liquor."

23  21 C.F.R. § 184.1033(a).  Similarly, the USDA has deemed that citric acid

24  "produced by microbial fermentation" is a "nonsynthetic" ingredient that "may be

25  used as ingredients in or on processed products labeled as 'organic.'" 7 C.F.R. §

26  205.605(a).  Thus, Plaintiffs cannot square their allegations that citric acid

27  produced in this manner is "artificial" with the FDA and USDA's regulatory

28

1   guidance deeming that it is "naturally occurring" and "non-synthetic" and all of

2   Plaintiffs' claims fail.  *See, e.g.*, *Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 807,

3   809 (N.D. Cal. 2022) (rejecting as implausible the plaintiff's claims because any

4   other conclusion would result in a finding that an FDA-approved technique is

5   "inherently misleading"), *aff'd*, 77 F.4th 1201 (9th Cir. 2023); *Roffman v. Perfect*

6   *Bar, LLC*, No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762, at *22-23 (N.D.

7   Cal. Sep. 2, 2022) (same).

8        Most compellingly of all, the FDA has defined "natural flavor" in its

9   regulations as including "fermentation products" – thus expressly contemplating

10  the use of microorganisms such as *Aspergillus niger* in their production – in a

11  definition that corresponds exactly to Plaintiffs' own description of the process.  21

12  C.F.R. § 101.22(a)(3) provides, in relevant part:

13       The term *natural flavor* or *natural flavoring* means the essential oil,

14       oleoresin, essence or **extractive**, protein hydrolysate, distillate, or any

15       product of roasting, heating or enzymolysis, which contains the

16       flavoring constituents derived from a spice, fruit or fruit juice,

17       **vegetable or vegetable juice**, edible yeast, herb, bark, bud, root, leaf

18       or **similar plant material**, meat, seafood, poultry, eggs, dairy products,

19       **or fermentation products thereof**, whose significant function in food

20       is flavoring rather than nutritional.

21  (emphasis added).  Here, an extractive such as sugar cane or beet juice is the

22  "essence or extractive" of "vegetable or vegetable juice … or similar plant

23  material."  The citric acid is the "fermentation product" of this extractive.

24  Plaintiffs specifically allege that the citric acid functions as a flavoring.  Comp. ¶¶

25  12, 14, 16, *passim.*

26       A complaint cannot simply assert that an ingredient is unnatural, but "must

27  plead ***why*** these allegedly offending ingredients are unnatural."  *Figy*, 67 F. Supp.

28

3d at 1090 (dismissing complaint where Plaintiff "provide[d] no detail whatsoever about how or when the offending ingredients [were] unnatural"). Plaintiffs' Complaint does not do so. Their extensive descriptions of the process by which the citric acid is allegedly produced, even if taken at face value, amount to nothing but an elaborate and disparaging explanation of natural fermentation. Plaintiffs' own Complaint and cited materials thus establish that citric acid production via *Aspergillus niger* is ***not*** an artificial process, and thus their claims are implausible and the Complaint must be dismissed in its entirety. *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (granting motion to dismiss because "Plaintiff cannot state a claim under the CLRA or UCL regarding Defendants' allegedly false, misleading, and deceptive 'All Natural' labeling"); *Figy*, 67 F. Supp. 3d at 1090 ("It is insufficient under Rule 9(b) to simply assert, no matter how foreign or synthetic-sounding an ingredient's name might be, that an ingredient is unnatural."); *Cohen v. Ainsworth Pet Nutrition LLC*, No. 2:20-cv-05289-MCS-AS, 2020 U.S. Dist. LEXIS 246315 (C.D. Cal. Oct. 26, 2020), at *12-13 ("[T]he Court cannot accept as true Plaintiff's allegations that taurine fortification of grain-free dog food is necessary because they are conclusory and contradicted by other allegations and citations in the Complaint.").

Contrary to Plaintiffs' allegations, neither the FDA nor USDA has ever declared citric acid, made in the way alleged here, to be an artificial flavor or an artificial preservative. Plaintiffs cite two 2001 Warning Letters (Compl. Ex. B, C) issued by local FDA District Directors from Maryland and Cincinnati respectively, and at the end of a laundry list of other claimed violations, each admit "[FDA has] not established a regulatory definition for the term 'natural'" outside of natural flavoring, and simply opine that calcium chloride and/or citric acid are artificial with no consideration of by which process they were made, or of 21 C.F.R. § 101.22. *See* Compl. Ex. B, C. Plaintiffs do not plead what the respondents'

1  replies were or what was the resolution of the letters.  Plaintiffs also misrepresent

2  the responses of the 1995 USDA AMS reviewers (Compl. ¶ 19), claiming that all

3  reviewers classified citric acid as synthetic, whereas in fact, the one out of three

4  reviewers who characterized the production process accurately and showed signs

5  of having read 21 CFR § 101.22 answered "natural."  Compl. Ex. D at 4.  None of

6  these documents represents the agencies' official policies, and other sources cited

7  by Plaintiffs, including the views of new-age pseudo-medical practitioners, carry

8  no weight whatsoever.

9  **b. Plaintiffs Have Not Alleged Using Citric Acid Produced with**

10  ***Aspergillus Niger* Would Deceive Reasonable Consumers**

11  Plaintiffs' claims fail under federal regulations, agency guidance, settled

12  science, and even their own citations, and the Court "need not settle the ontological

13  status of [Defendant's Products,] nor decide whether the distinction Plaintiffs

14  emphasize could ever support a viable claim, in order to conclude that the

15  complaint in this case fails to plausibly allege materially misleading labeling."

16  *Baines v. Nature's Bounty (NY), Inc.*, No. 23-710-cv, 2023 U.S. App. LEXIS

17  32630, at *6 (2d Cir. Dec. 11, 2023).

18  As noted above, though there are many types of black mold, when most

19  people refer to "black mold" in everyday speech, they are typically referring to

20  *stachybotrys chartarum*, which is the type of black mold most often detected in

21  drywall and wallpaper and can produce toxins harmful to the human body.

22  Though some molds, such as *stachybotry chartarum*, are indeed dangerous when

23  consumed or ingested, there are many molds that are safe, beneficial, and used to

24  create products that are safe for consumption.  For example, penicillin, certain

25  types of alcohol, and cheeses, including blue cheese and brie cheese, are made

26  using mold.  Plaintiffs' vague allegations about general industry practice for

27  manufacturing commercial batches of citric acid is merely fear-mongering and

28

1   should not be conflated with reasonable consumers' expectations for an ingredient

2   like citric acid.  The Complaint, which lacks any specific allegations about the

3   Products and Walmart's ingredient supply, even goes so far as to include images,

4   with no citation, of some unknown manufacturing facility, with no allegation that it

5   has any ties to these Products, Walmart, or the citric acid used in these Products.

6   The implication is that a lot of pipes and tubes are likely used to make the citric

7   acid in the Products, and a lot of pipes and tubes make an ingredient artificial.

8   This has no basis in the law or in the understanding of a reasonable consumer.

9        In *Baines v. Nature's Bounty NY Inc.*, the Second Circuit affirmed the

10  dismissal of a complaint that challenged a fish oil product based on a purported

11  molecular difference between the omega-3s derived from fish and those derived

12  from a chemical process.  2023 U.S. App. LEXIS 32630, at *6.  The court did not

13  decide whether such a difference existed or mattered, because the complaint failed

14  to allege any facts showing that reasonable consumers would care about or notice

15  it. *Id*. The court noted that the complaint only made conclusory assertions that

16  consumers cared about the molecular form of omega-3s, without any supporting

17  allegations that made this plausible. *Id*.  While the District Court dismissed the

18  complaint in its entirety, explaining that the evidence a plaintiff relies on

19  demonstrates that her complaint "lack[s] the facial plausibility necessary to survive

20  a motion to dismiss," (*Baines v. Nature's Bounty NY*, 21-CV-5330, 2023 U.S. Dist.

21  LEXIS 53154 at *15-*16 (E.D.N.Y. Mar. 28, 2023)), the Second Circuit did not

22  reach this question in affirming the dismissal on different grounds, 2023 U.S. App.

23  LEXIS 32630, at *6. It explained that it need not even consider whether the

24  plaintiff's molecular distinction "could ever support a viable claim" because the

25  complaint lacked "factual allegations that make it plausible that a reasonable

26  consumer reading 'fish oil' on the front label of Defendants' product would be

27  misled." *Id.* The Second Circuit observed that the complaint contained only

28

DEF.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. TO DISMISS
COMPLAINT: CASE NO. 5:25-CV-00186-KK-SHK

conclusory allegations "that consumers care about the distinction between triglyceride and ethyl-ester omega-3s," while lacking "*any* supporting allegations that make it plausible that customers who purchase Defendant's product are actually thinking about the molecular form of their fish-oil-derived omega-3s at all." *Id at 7* (emphasis added).

The same reasonable consumer standard governs Plaintiffs' claims here. *See McGinity,* 69 F.4th at 1097; *Moore,* 4 F.4th at 881. Thus, as in *Baines,* Plaintiffs must allege more than a "mere possibility" of deception; rather, they must allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore*, 4 F.4th at 882. They have not done so.

Instead, like in *Baines*, Plaintiffs allege only "in a conclusory fashion that consumers care" about any purported distinction with citric acid produced by microbial fermentation in their microwavable macaroni and cheese. *See Baines*, 2023 U.S. App. LEXIS 32630 , at *7.  Plaintiffs provide no facts to support their allegation that "[t]he 'No artificial flavors' and 'no artificial preservatives' … statements are material to consumers" with regard to this distinction. Complaint ¶ 37. The one source Plaintiffs cite to prop up that conclusory allegation is inapposite—it discusses preservative *free* claims, rather than "No Artificial" claims.  *Id.* ¶ 38 n.16. And Plaintiffs allege no other facts showing why a reasonable consumer would care about the distinction in manufacturing processes for citric acid derived from citrus fruits as opposed to fermentation via *Aspergillus niger*, a naturally living organism. Accordingly, they fail to plausibly allege the "no artificial flavors" and "no artificial preservatives" labels would mislead a reasonable consumer.

Plaintiffs' allegations here present an even stronger case for dismissal than those in *Baines*. First, Plaintiffs declare without support that the "Citric acid acts as

an artificial flavoring and preserving agent when added to food products, including the Products at issue." Compl. ¶ 33. Yet citric acid, even if produced via microbial fermentation using *Aspergillus niger*, does not fit their definition of "artificial." Plaintiffs define artificial as meaning "made by people" (Compl. ¶ 31), but citric acid, even if made in the form Plaintiffs baselessly allege it is, is made by a living organism, *Aspergillus niger*, through a natural process, not by humans mixing chemicals in a laboratory.  Moreover, Plaintiffs do not define what "artificial" means to reasonable consumers.  *See, e.g., Pelayo.*, 989 F. Supp. 2d at 980 (concluding that the plaintiff "failed to allege either a plausible objective definition of the term 'All Natural' or her subjective definition of the term 'All Natural' that is shared by the reasonable consumer"); *see also George v. Starbucks Corp.*, No. 19-cv- 6185, 2020 U.S. Dist. LEXIS 217016, at *6 (S.D.N.Y. Nov. 19, 2020) (rejecting the plaintiff's construction of "no artificial dye or flavor" as relating to the use of pesticides); *Zahora v. Orgain LLC,* No. 21-cv-705, 2021 U.S. Dist. LEXIS 213525, at * 7 (N.D. Ill. Nov. 4, 2021) (stating that the "case is about a reasonable consumer's understanding of the labeling" and whether a reasonable consumer would believe the Product's flavor 'would come from vanilla beans and [not] from artificial flavors'").

Second, the alleged molecular distinction in *Baines* is nonexistent here. Plaintiffs challenge a microbial fermentation process that is used to produce citric acid that is *molecularly identical* to that extracted from citrus fruits.  *Baines,* 2023 U.S. App. LEXIS 32630, *6.  In short, Plaintiffs do not—and cannot—plausibly allege that reasonable consumers are deceived by a nonexistent distinction in the nature of the product under a nonexistent "artificial" standard.

Finally, Plaintiffs' equivocating and conclusory allegations about general industry practice, and the purported use of "genetically modified" ingredients, fail to assert a plausible claim for relief. Complaint ¶¶ 27, 28.  Courts routinely reject

1   similar allegations on the grounds that they constituted mere conclusory statements
2   and fanciful claims. *See, e.g.*, *Baines*, 2023 U.S. App. LEXIS 32630, *7; *Rooney v.*
3   *Cumberland Packing Corp.*, No. 12-CV-0033, 2012 U.S. Dist. LEXIS 58710, at
4   *10-11 (S.D. Cal. Apr. 16, 2012) (dismissing without leave to amend a complaint
5   alleging that "Sugar in the Raw" was deceptive because it was processed and not
6   natural sugar); *Red v. Kraft Foods, Inc.,* No. 10-cv-1028-GW(AGRx), 2012 U.S.
7   Dist. LEXIS 164461, at *10 (C.D. Cal. Oct. 25, 2012) (dismissing challenge to
8   "Made with Real Vegetables" on a cracker box because it "strains credulity" that
9   the product is "composed of primarily fresh vegetables"); *Ross v. Sioux Honey*
10  *Ass'n*, No. 12-cv-1645, 2013 U.S. Dist. LEXIS 618, at *48-*50 (N.D. Cal. Jan. 14,
11  2013) (dismissing as implausible complaint that challenged honey that was
12  processed to remove pollen); *Podpeskar v. Dannon Co.*, No. 16-cv-8478, 2017
13  U.S. Dist. LEXIS 198948, at *12 (S.D.N.Y. Dec. 3, 2017) (finding the plaintiff's
14  challenging "natural" claim for dairy products when the cows were fed GMO crops
15  is "too speculative to state a plausible claim"); *Newton v. Kraft Heinz Foods Co.*,
16  2018 U.S. Dist. LEXIS 241406, *20 (E.D.N.Y. Dec. 18, 2018) (similar).

17          Thus, Plaintiffs still fail to state a claim for relief because they cannot
18  plausibly allege that the distinction in producing citric acid via microbial
19  fermentation would deceive or matter to a reasonable consumer.

20  **II.    Plaintiffs Lack Standing Because They Fail to Allege Actual Reliance**

21          To establish Article III standing, Plaintiffs must show: "(1) [] [they have]
22  suffered an injury in fact that is concrete and particularized, and actual or
23  imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the
24  injury is likely to be redressed by a favorable court decision." *Salmon Spawning &*
25  *Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008); *Lujan v.*
26  *Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[t]he party invoking federal
27  jurisdiction bears the burden of establishing these elements"); *see also Schmier v.*

28  DEF.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. TO DISMISS
    COMPLAINT: CASE NO. 5:25-CV-00186-KK-SHK

*U.S. Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2002) (a "concrete" injury, "distinct and palpable . . . as opposed to merely abstract") (citations omitted).

Further, Plaintiffs' claims under the CLRA must satisfy statutory standing requirements. *See Birdsong v. Apple*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). To establish standing under the CLRA, Plaintiffs must show economic injury and must have relied on an alleged misrepresentation. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).

Plaintiffs allege that they "saw and relied on" the no artificial flavoring and preservatives claims on the Products and would not have purchased the Products if they knew the "truth." Compl. ¶ 12. These vague allegations are insufficient to establish standing in this case for at least three reasons.

First, because citric acid can perform functions in products separate from acting as a flavoring or preservative agent, such as an emulsifier or pH balancer, it is impossible to read the challenged label claims as meaning the Products are free of "artificial" citric acid. Products can lawfully be advertised as "naturally flavored" and include "artificial" citric acid, along with a host of other artificial ingredients, that are entirely consistent with that statement. Accordingly, it is not possible for Plaintiffs or any other consumer to rely on the challenged claim to conclude that the Products are free of "artificial" citric acid. Furthermore, it is entirely implausible that Plaintiffs or any reasonable consumer would avoid citric acid when used as a flavoring or preservative agent, but not when used for other authorized purposes.

Second, if Plaintiffs were actually seeking to avoid citric acid as an ingredient, they would not have purchased the Products, because citric acid is disclosed (and its function is not disclosed). A cursory review of the label would inform Plaintiffs of the presence of citric acid and other ingredients in the Products

that Plaintiffs might consider artificial. *See McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023) (clarifying that a reasonable consumer is not limited to front-label statements, and will refer to other parts of the packaging as well as any contextual clues to interpret ambiguous front-label claims); *accord Moore*, 4 F.4th 874. Further, reference to the front label claims regarding no artificial flavors or preservatives cannot communicate that the citric acid is natural, because citric acid can be used for multiple purposes other than as a flavoring or preservative.

### IV.    Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law

Absent a plausible claim of deception, the breach of express warranty claim also fails. *See Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) (affirming dismissal of warranty claims premised on the "exact same representations as her consumer protection claim").

In addition, Plaintiffs' claim for implied warranty fails because Plaintiffs failed to allege the Products were unmerchantable, either because they are unfit for their ordinary purpose or because they do not "conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code. § 2314(2)(f). Nor have Plaintiffs alleged that the Products do not work as they are intended.  Plaintiffs received a microwavable macaroni and cheese product fit for consumption, and their implied warranty claim cannot survive.  *See Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 748–49 (S.D. Cal. 2020) (dismissing plaintiff's breach of implied warranty of merchantability claim because there was "no indication that Plaintiff received anything other than" what the product described).

### V.    Plaintiffs Cannot State a Claim for Misrepresentation or Fraud

To state a claim for misrepresentation or fraud, Plaintiffs must plead, among other things, that Defendant knowingly or recklessly made a false representation, intending for Plaintiffs to rely on that misrepresentation, and that Plaintiffs

---

reasonably relied on that representation.  *Manderville v. PCG & S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (Ct. App. 2007); *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Ct. App. 2014).  Because the Products' ingredient statement disclosed their ingredients, Plaintiffs cannot plausibly allege the Products' packaging contained any intentional misrepresentation. Plaintiffs' conclusory statement that Walmart "intentionally misrepresented, omitted, and concealed from consumers material facts" regarding the Products is a legal conclusion entitled to no weight, and their claim should be dismissed.

## VI.    Plaintiffs Lack Standing to Seek Injunctive Relief

To have standing to seek injunctive relief, Plaintiffs must demonstrate that they are "realistically threatened by a repetition of [the violation]."  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 11 (1983); *Chapman v. Pier 1 Impos. Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  However, Plaintiffs have made abundantly clear that they are aware of the ingredients in the Products.  They are thus at no risk of future harm and therefore lack standing to seek injunctive relief.  Courts have repeatedly found that a plaintiff's knowledge of allegedly unlawful or misleading conduct precludes standing for injunctive relief under Article III because the plaintiff cannot prove that he will, in the future, rely on the challenged statement to his detriment, even if he claims he would purchase the Products again.  *See KLN Enters.*, 2024 U.S. Dist. LEXIS 73133, at *14 (finding plaintiff lacked standing for injunctive relief); *Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261 (N.D. Cal. June 4, 2020) (finding plaintiffs lacked standing to seek injunctive relief because "[n]ow that Plaintiffs know the Product does not contain white chocolate, it is difficult to see how Plaintiffs could be misled into purchasing it in the future"); *accord Jackson v. General Mills*, Inc., No. 18-cv-2634-LAB, 2019 U.S. Dist. LEXIS 162447, at *13 (S.D. Cal. Sept. 20, 2019); *Joslin v. Clif Bar & Co.*, No.

4:18-cv-04941-JSW, 2019 U.S. Dist. LEXIS 192100, at *12-13 (N.D. Cal. Aug. 26, 2019).  Where a plaintiff's claims are based "entirely on a past transaction," and a plaintiff has knowledge of the alleged misconduct, courts have held that the plaintiff "as a matter of law, can not establish that he is under any threat of suffering actual or imminent future harm" and his claims for injunctive relief fail. *Campion v. Old Republic Home Protections Co.*, 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007).

## VII.    Plaintiffs Cannot Bring a Nationwide Class Action Based on the Laws of other States

In line with the majority of jurisdictions, Ninth Circuit courts "require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims against [defendants]." *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017). "[I]n a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage." *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 U.S. Dist. LEXIS 220063, at *23 (N.D. Cal. Dec. 23, 2019); *Hindsman v. GM LLC*, No. 17-CV-05337-JSC, 2018 U.S. Dist. LEXIS 92319, at *49 (N.D. Cal. June 1, 2018) (dismissing all claims not involving California consumers being judged on California law).

Plaintiffs' nationwide claims using the laws of fifty different states must be dismissed.  The named Plaintiffs are California residents and bought the Products from California stores, so any reliance on state statutes from other jurisdictions cannot be brought for lack of Article III standing.  *Johnson*, 272 F. Supp. 3d at 1175.  Consequently, any "claims purportedly brought under the laws of jurisdictions other than California" should be dismissed where, as here, the "Lead Plaintiff[] reside[s] in California and purchased the Products in California." *Snarr*,

2019 U.S. Dist. LEXIS 220063, at *23.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant respectfully requests the Court dismiss this lawsuit with prejudice.

Dated:  March 28, 2025           FOLEY HOAG LLP

*/s/ Monica Frascona*
Monica Frascona (SBN 242308)
*mfrascona@foleyhoag.com*
FOLEY HOAG LLP
4643 South Ulster Street
Suite 970
Denver, Colorado 80237
Tel: (720) 782-5075
Fax: (617) 832-7000

August T. Horvath (*pro hac vice* motion forthcoming)
*ahorvath@foleyhoag.com*
FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel: (212) 812-0400
Fax: (212) 812-0399

*Attorneys for Defendant*
*Walmart Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Walmart Inc., certifies that this brief contains 6, 997 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 28, 2025                    */s Monica Frascona*
                                          Monica Frascona

## CERTIFICATE OF SERVICE

I, Monica Frascona, hereby certify that on March 28, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system and electronically served to all counsel of record.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 28, 2025                    */s Monica Frascona*
                                          Monica Frascona