1  **CROSNER LEGAL, P.C.**
2  Lilach H. Klein (SBN 323202)
   *lilach@crosnerlegal.com*
3  Michael T. Houchin (SBN 305541)
   *mhouchin@crosnerlegal.com*
4  Zachary M. Crosner (SBN 272295)
   *zach@crosnerlegal.com*
5  9440 Santa Monica Blvd. Suite 301
6  Beverly Hills, CA 90210
7  Tel: (866) 276-7637
   Fax: (310) 510-6429
8
9  ***Attorneys for Plaintiffs and the***
10 ***Proposed Class***

11

12                **UNITED STATES DISTRICT COURT**
13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
15 KAITLYN TAYLOR and JUSTIN        Case No. 5:25-CV-00186-KK-SHK
   ALICEA, on behalf of themselves and all
16 others similarly situated,           **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT OF**
17                        Plaintiffs,   **PLAINTIFFS' OPPOSITION TO**
                                        **DEFENDANT'S MOTION TO**
18          v.                          **DISMISS COMPLAINT**
19
20 WALMART, INC.,                       Date:   May 8, 2025
21                                      Time:   9:30 a.m.
                          Defendant.    Ctrm:   3
22                                      Judge:  Hon. Kenly Kiya Kato
23
                                        Complaint Filed: Jan. 23, 2025
24                                      Trial Date:      None Set
25
26
27
28

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION .................................................................................1

3    II.   BACKGROUND ..................................................................................2

4    III.  LEGAL STANDARD ...........................................................................3

5    IV.   ARGUMENT ........................................................................................4

6          A.    Plaintiffs Plausibly Allege the Product Contains Artificial Citric

7                Acid .......................................................................................4

8          B.    Reasonable Consumers Are Likely to be Deceived by the

9                Product's Labels ....................................................................8

10               1.    Plaintiffs Plausibly Allege Citric Acid Derived from

11                     Chemical Processing Using Aspergillus Niger is

12                     Artificial ......................................................................8

13         C.    Reasonable Consumers are Deceived by the Use of Artificial

14               Citric Acid in the Product ..................................................13

15         D.    Plaintiffs Allege Actual Reliance ......................................16

16         E.    Plaintiffs Adequately State Claims for Breach of Warranty ..............17

17         F.    Plaintiffs State a Claim for Misrepresentation/Fraud ........18

18         G.    Plaintiffs Have Standing to Seek Injunctive Relief ...........18

19         H.    Plaintiffs' Nationwide Class Claims Should Be Addressed at

20               Class Certification .............................................................21

21   V.    CONCLUSION ...................................................................................22

22

23

24

25

26

27

28

-i-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3   *Adams v. Kraft Heinz Co.*,

4       No: 5:22-cv-290, 2022 WL 18776273 (M.D. Fl. Jan. 9, 2022) .......................... 8

5   *Allred v. Frito-Lay North America, Inc.*,

6       No. 17-cv-1345, 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ........................ 14

7   *Allred v. Kellogg Co.*,

8       No. 17-cv-1354, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) .................... 7, 20

9   *Ashcroft v. Iqbal*,

10      556 U.S. 662 (2009) ..................................................................................... 3

11  *Baines v. Nature's Bounty NY Inc.*,

12      No. 23-710-cv, 2023 WL 8538172 (2nd Cir. 2023) ...................................... 14

13  *Battle v. Taylor James, LLC*,

14      607 F.Supp.3d 1025 (C.D. Cal. 2022) .......................................................... 21

15  *Bell Atl. Corp. v. Twombly*,

16      550 U.S. 544 (2007) ..................................................................................... 3

17  *Branca v. Bai Brands, LLC*,

18      No. 3:18-cv-00757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) .............. 14, 19

19  *Brazil v. Dole Packaged Foods, LLC*,

20      660 Fed. Appx. 531 (9th Cir. 2016) ............................................................ 10

21  *Caldwell v. Nordic Naturals, Inc.*,

22      709 F.Supp.3d 889 (N.D. Cal. 2024) ........................................................... 17

23  *Campion v. Old Republic Home Protections Co.*,

24      861 F. Supp. 2d 1139 (S.D. Cal. 2012) ........................................................ 20

25  *Carbine v. Target Corporation*,

26      No. 24-cv-03721, 2025 WL 501829 (C.D. Cal. Feb. 13, 2025) ................*passim*

27  *Cattie v. Wal-Mart Stores, Inc.*,

28      504 F. Supp. 2d 939 (S.D. Cal. 2007) .......................................................... 20

-ii-

*Davidson v. Kimberly-Clark Corporation*,
    889 F.3d 956 (9th Cir. May. 9, 2018) ................................................ 19, 20, 21

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .............................................................. 22

*Fitzhenry-Russell v. Coca-Cola Co.*,
    No. 5:17-cv-00603, 2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) ................... 21

*Fried v. Snapple Beverage Corp.*,
    753 F.Supp.3d 1145 (S.D. Cal. 2024) .....................................................*passim*

*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982) ............................................................... 21

*Hayes v. Kraft Heinz Company*,
    No. 1:23-cv-16596, 2024 WL 4766319 (N.D. Ill. Nov. 13, 2024) ............*passim*

*Hilsley v. Gen. Mills, Inc.*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019) ..................................................... 16

*Joslin v. Clif Bar & Co.*,
    No. 4:18-cv-04941, 2019 WL 5690632 (N.D. Cal. 2019) ............................ 20

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................... 12

*Lozano v. Walmart, Inc.*,
    No. CV 23-4500, 2024 WL 412606 (C.D. Cal. Feb. 1, 2024) .......................... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ................................................................. 3

*Mason v. Reed's Inc.*,
    515 F. Supp. 3d 135 (S.D.N.Y. 2021) ................................................. 10, 12

*McGinity v. P&G*,
    69 F.4th 1093 (9th Cir. 2023) ............................................................... 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ................................................................. 3

-iii-

*Moore v. Trader Joe's Co.*,

    4 F.4th 874 (9th Cir. 2021) ............................................................................... 17

*Myers v. Wakefern Food Corp.*,

    No. 20-CV-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) .......................... 8

*Noohi v. Kraft Heinz Co.*,

    CV 19-10658, 2020 WL 5554255 (C.D. Cal. July 20, 2020) ........................... 7

*Osborne v. Kraft Foods Grp., Inc.*,

    No. 15-cv-02653 (N.D. Cal. Oct. 15, 2015) ..................................................... 7

*Pelayo v. Conagra Brands, Inc.*,

    No. 23-cv-05833, 2024 WL 3544621 (N.D. Cal. May 2, 2024) ........................ 6

*Plotts v. Am. Honda Motor Co.*,

    No. CV 22-04529, 2023 WL 4843342 (C.D. Cal. June 9, 2023) ...................... 21

*Precht v. Kia Motors Am., Inc.*,

    No. CV 14-1148, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) .................... 22

*Prescott v. Nestle USA, Inc.*,

    No. 19-cv-07471, 2020 WL 3035798 (N.D. Cal. June 4, 2020) ...................... 20

*Roper v. Big Heart Pet Brands, Inc.*,

    510 F.Supp.3d 903 (E.D. Cal. 2020) ......................................................... 18, 19

*Segedie v. Hain Celestial Grp., Inc.*,

    No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ........................ 10

*Shank v. Presidio Brands, Inc.*,

    No. 17-cv-00232, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .................... 20

*Squeo v. Campbell Soup Company*,

    No. 24-cv-02235, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024) ..............*passim*

*Tapia v. Coca-Cola Co.*,

    No. 22-cv-01362, 2023 WL 2621346 (N.D. Cal. Mar. 23, 2023) .................... 15

*Tarzian v. Kraft Heinz Foods Co.*,

    No. 18-C-7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ........................... 7

-iv-

*Trammell v. KLN Enterprises, Inc.*,

    2024 WL 1722243 (S.D. Cal. Apr. 22, 2024) ...................................... 20

*Tucker v. Post Consumer Brands, LLC*,

    No. 19-cv-03993, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ..................... 20

*Valencia v. Snapple Beverage Corporation*,

    No. 23-cv-01399, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ................... 6, 7

*Vance v. Church & Dwight Co.*,

    No. 2:22-cv-00044, 2023 WL 2696826 (E.D. Cal. Mar. 29, 2023) .................. 21

*Ward v. Pepperidge Farm, Inc.*,

    No. 1:24-cv-00078, 2025 WL 919516 (S.D. N.Y. Mar. 26, 2025)............*passim*

*Whiteside v. Kimberly Clark Corp.*,

    108 F.4th 771 (9th Cir. July 17, 2024) ............................................... 17

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,

    No. 17-cv-06591, 2018 WL 2298963 (N.D. Cal. May 21, 2018) ..................... 21

**Statutes**

Cal. Civ. Code §§ 1750, *et seq.* ................................................................ 3

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................... 3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................... 3

**Rules**

7 C.F.R. § 205.605(a) ....................................................................... 10, 11

21 C.F.R. § 101.22(a)(3) ....................................................................... 11

21 C.F.R. § 173.280 .......................................................................... 9, 12

21 C.F.R. § 184.1033(a) ................................................................. 8, 9, 10

Fed. R. Civ. P. 9(b) ............................................................................. 5

Fed. R. Civ. P. 12(b)(6) ................................................................ 3, 12, 15

Fed. R. Civ. P. 23 .............................................................................. 21

-v-

## I.    __INTRODUCTION__

In this consumer protection class action, Plaintiffs Kaitlyn Taylor and Justin Alicea ("Plaintiffs") allege that Defendant Walmart, Inc.'s ("Defendant") Great Value Macaroni & Cheese Original Microwavable Cup product (the "Product") is deceptively labeled as containing "No artificial flavors" and "No artificial preservatives" because the Product is made with the artificial flavoring and preservative ingredient citric acid. *See* ECF No. 1 ("Compl."), at ¶¶ 2-3.

In its motion to dismiss ("MTD"), Defendant does not contest that citric acid functions as a flavoring or preservative ingredient in the Product. *See* ECF No. 11-1. Instead, Defendant argues Plaintiffs fail to plausibly allege (1) the Product contains artificial citric acid and (2) citric acid derived from chemical processing using *Aspergillus niger* is artificial. Courts routinely reject these arguments and have declined to dismiss citric acid cases with near identical allegations. *See*, *e.g.*, *Hayes v. Kraft Heinz Company*, No. 1:23-cv-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (declining to dismiss case involving Kraft Mac & Cheese where plaintiffs alleged product contained artificial citric acid despite being advertised as containing "no artificial flavors, preservatives, or dyes."); *Carbine v. Target Corporation*, No. 24-cv-03721, 2025 WL 501829, at *3 (C.D. Cal. Feb. 13, 2025); *Fried v. Snapple Beverage Corp.*, 753 F.Supp.3d 1145, 1152-1153 (S.D. Cal. 2024); *Squeo v. Campbell Soup Company*, No. 24-cv-02235, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024). This Court should reach a similar conclusion and deny Defendant's motion.

Defendant's remaining arguments that Plaintiffs (1) fail to allege reasonable consumers would be deceived, (2) fail to allege actual reliance, (3) fail to state a claim for misrepresentation or fraud, (4) lack standing to seek injunctive relief, and (5) cannot bring a nationwide class based on laws of other states should be denied for the reasons discussed below.

//

-1-

## II.    <u>BACKGROUND</u>

The Complaint alleges, "[t]he Product's front label packaging prominently represents that the Product contains 'No artificial flavors' and 'No artificial preservatives.'" Compl., ¶ 2. Yet, these representations are false and misleading because the Product is made with the artificial flavoring and preservative ingredient citric acid. *Id.*, ¶ 3.

Plaintiffs allege "Defendant does not use natural citric acid extracted from fruit in the Product," as extraction from natural citrus juice is "no longer commercially available" and instead "uses artificial manufactured citric acid in the Product" derived from heavy chemical processing. Compl., ¶¶ 17-18. The citric acid used in the Product is commercially produced and "is manufactured using a type of black mold called *Aspergillus niger*…" *Id.* "Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from *aspergillus niger* fermentation liquor." *Id.*, ¶ 22. "The citric acid that Defendant uses in the Product … contains residues of those chemical solvents." *Id.* Plaintiffs allege, "[c]onsumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath." Compl., ¶ 17.

Plaintiff Kaitlyn Taylor purchased the Product "in the 4-cup and 8-cup varieties several times throughout the class period at a Walmart store located in Hemet, California" and Plaintiff Justin Alicea purchased the Product "in the 4-cup variety several times throughout the class period at a Walmart store in Oroville, California." Compl., ¶¶ 10-11. "Plaintiffs saw and relied on the 'No artificial flavors' and 'No artificial preservatives' claims on the front label of the Product." *Id.*, ¶ 12. "Plaintiffs would not have purchased the Product, or would have paid less for the Product, had they known that the Product contains an artificial flavoring and preserving ingredient in direct contradiction to the 'No artificial flavors' and 'No

-2-

1    artificial preservatives' statements on the Product's front label." *Id.*

2        Plaintiffs bring this action on behalf of a nationwide class and California

3    subclass alleging violations of California's Consumers Legal Remedies Act, Cal.

4    Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal.

5    Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law,

6    Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and breach of express and implied

7    warranties, negligent misrepresentation, and intentional misrepresentation/fraud. *Id.*,

8    ¶¶ 57-127.

9                        **III.    LEGAL STANDARD**

10        "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks

11    a cognizable legal theory or sufficient facts to support a cognizable legal theory."

12    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To

13    survive a Rule 12(b)(6) motion, a Plaintiffs need only plead "enough facts to state a

14    claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

15    544, 570 (2007).

16        A claim is facially plausible when a Plaintiffs pleads "factual content that

17    allows the court to draw the reasonable inference that the defendant is liable for the

18    misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "accept

19    factual allegations in the complaint as true and construe the pleadings in the light

20    most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*

21    *Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

22    //

23    //

24    //

25    //

26    //

27    //

28    //

-3-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# IV.    ARGUMENT

## A.    Plaintiffs Plausibly Allege the Product Contains Artificial Citric Acid[1]

Defendant argues Plaintiffs fail to plausibly allege "that the citric acid in the Products is artificial" and only plead allegations of "an allegedly common industry practice." *See* MTD at 14. Not so. Plaintiffs allege that Defendant uses artificial manufactured citric acid in the Product that is derived from heavy chemical processing. Compl., ¶ 17. Plaintiffs explain why the citric acid used in the Product is artificial: "[c]ommercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger*" and "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from *aspergillus niger* fermentation liquor." *Id.*, ¶¶ 17, 22. "The citric acid that Defendant uses in the Product is produced through chemical solvent extraction and contains residues of those chemical solvents." *Id.*, ¶ 22.

The Complaint also incorporates by reference several academic articles describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety. Compl., ¶¶ 17-36. Citing the United States Department of Agriculture ("USDA"), Plaintiffs allege "Defendant does not use natural citric acid extracted from fruit in the Product" because "it is not commercially feasible to use natural citric acid extracted from fruits." *Id.*, ¶¶ 17-18. Plaintiffs cite peer-reviewed research further explaining the difference between naturally occurring citric acid and the artificial citric acid in the Product:

---

[1] Defendant's heading reads "Plaintiffs Have Not Pled that Citric Acid In the Products Is an Artificial Flavor or an Artificial Preservative" ("MTD at 14), but Defendant only argues that Plaintiffs fail to plead the citric acid in the Product is artificial. *See id.*, at 14:17-18. Defendant does not argue that the citric acid in the Product does not function as a flavoring or preservative ingredient in the Product. *See generally*, MTD.

-4-

Citric acid naturally exists in fruits and vegetables. However, **it is _not_ the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive.** Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergillus niger* is a known allergen.

*Id.*, ¶ 17 (emphasis added).

These allegations go "beyond simple allegations of a common industry practice and are sufficient to 'provide enough factual support to raise [Plaintiff's] right to relief above a speculative level.'" *Hayes v. Kraft Heinz Company*, 2024 WL 4766319, at *3.

Courts analyzing similar cases have rejected identical arguments. For example, in *Squeo v. Campbell Soup Company*, the Court found it plausible that the potato chips at issue contained artificially produced citric acid where plaintiffs alleged (1) "it is not the naturally occurring citric acid, but the manufactured citric acid . . . that is used extensively as a food and beverage additive" and (2) "it is not commercially feasible to use natural citric acid extracted from fruits," with citations to reports from a scientific journal and the USDA. 2024 WL 4557680, at *4. The Court held, "[t]hese supported facts are sufficient at the pleading stage, even under the heightened requirements of Rule 9(b)—accepting the alleged facts as true, as the Court must, <u>it is highly likely</u> that the citric acid included in the chips was artificially produced." *Id.* (emphasis in original).

In *Fried v. Snapple Beverage Corp.*, the court ruled that artificial citric acid allegations were sufficient where the plaintiff alleged (1) the manufactured citric acid in the products was derived from *Aspergillus niger*, (2) each of the subject products contained manufactured citric acid, and (3) manufactured citric acid is an industrial chemical. 753 F.Supp.3d at 1152-1153. These allegations—even less detailed than the allegations made by Plaintiffs here—were sufficient to show linkage between the defendant's products and manufactured citric acid. *See id*. Other

-5-

courts routinely reject this same argument. *See, e.g.*, *Carbine*, 2025 WL 501829, at *3-4 (plaintiff plausibly alleged "the citric acid in the products is artificially produced" by alleging it is manufactured using chemical processing and citing articles regarding the chemical process and its prevalence in the food industry); *Hayes*, 2024 WL 4766319, at *3 (finding sufficient connection between the industry practice of using artificial citric acid and defendants' practices where plaintiffs "incorporate by reference several academic studies and articles describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety"); *Ward v. Pepperidge Farm, Inc.*, No. 1:24-cv-00078, 2025 WL 919516, at *4 (S.D. N.Y. Mar. 26, 2025) (plaintiff adequately alleged presence of manufactured citric acid where complaint cited articles about declining production of natural citric acid and proliferation of manufactured citric acid in food products).

Defendant's cited cases are distinguishable. In *Pelayo v. Conagra Brands, Inc.*, No. 23-cv-05833, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024), the plaintiffs alleged only that "[c]ommercial food manufactures, like [the defendant], use a form of citric acid that is derived from heavy chemical processing," an allegation which the court characterized as "conclusory and unsupported by any facts." *Id*. Notably, the *Pelayo* court granted leave to amend the complaint, finding "[i]t may be that credible reports and studies about food industry practices on that score would be enough to establish plausibility." *Id*. In *Valencia*, the plaintiff alleged, "without any corresponding factual basis," that "citric acid today is industrially made." *See* MTD at 15, citing *Valencia v. Snapple Beverage Corporation*, No. 23-cv-01399-CS, 2024 WL 1158476, at *1, *5-6 (S.D.N.Y. Mar. 18, 2024). Courts have distinguished *Pelayo* and *Valencia* where, as here, plaintiffs offer supported and more-detailed allegations regarding the use of artificial citric acid in the products at issue, including allegations identical to those made in the Complaint. *See, e.g.*, *Squeo*, 2024 WL 4557680, at *4 (distinguishing *Pelayo* and

-6-

*Valencia* and finding it "highly likely" the products at issue contained artificial citric acid where plaintiffs "offer support for their allegations concerning the prevalence of manufactured citric acid in food products.").

*Osborne v. Kraft Foods Grp., Inc.*, No. 15-cv-02653 (N.D. Cal. Oct. 15, 2015) and out-of-circuit case *Tarzian v. Kraft Heinz Foods Co.*, No. 18-C-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019) are similarly distinguishable. *See* MTD at 15-16. In both cases, the plaintiffs failed to specify the type of citric acid or artificial ingredient used in the product. *See id.* Here, however, Plaintiffs do allege which version of citric acid is used in the Product. *See* Compl., ¶ 17 ("Defendant uses artificial manufactured citric acid in the Product."). Courts have distinguished *Osborne* and *Tarzian* for this same reason. *See*, *e.g.*, *Allred v. Kellogg Co.*, No. 17-cv-1354, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (distinguishing *Osborne* where plaintiff specified distinction between the natural and artificial versions of the ingredients and "allege[d] which version [defendant] uses in its products"); *Carbine*, 2025 WL 501829, at *4 (distinguishing *Osborne* where plaintiff alleged "the specific preservative that is artificial, the chemical process that renders it artificial, its use in Defendant's products, and its prevalence in the food industry more broadly."); *Noohi v. Kraft Heinz Co.*, CV 19-10658, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (distinguishing *Tarzian* where plaintiffs "explicitly alleged that Crystal Light contains artificial malic acid."); *Fried*, 753 F.Supp.3d at 1152, fn. 2 (same regarding manufactured citric acid); *Squeo*, 2024 WL 4557680, at *5 (distinguishing *Tarzian* where plaintiff offered more detailed allegations regarding the citric acid in the products).

Defendant's out-of-circuit authorities regarding malic acid are unavailing. *See* MTD at 17. In *Hawkins v. Coca-Cola Co.*, the plaintiff alleged, without any support and in a conclusory fashion, that laboratory analysis demonstrated the product in question contained artificially produced malic acid. 654 F.Supp.3d 290, 297 (S.D. N.Y. 2023). The court rejected this "amorphous" allegation as insufficient. *Id.*, at

-7-

305-06. "But here, Plaintiffs offer more than 'amorphous' allegations.'" *See Squeo*, 2024 WL 4557680, at *5 (distinguishing *Hawkins* and finding plaintiffs adequately alleged the presence of artificial citric acid in products). In *Myers*, the plaintiff "fail[ed] to substantiate how ... the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors." *Myers v. Wakefern Food Corp.*, No. 20-CV-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022). By contrast, here, Plaintiffs have comprehensively described, in scientific detail, how the citric acid in the Product is artificial, including incorporating by reference scholarly articles regarding how natural citric acid extracted from citrus fruit is no longer commercially available, and how the citric acid used in the Product is processed using the black mold *Aspergillus niger*. *See* Compl., ¶¶ 17-36; *see also Adams v. Kraft Heinz Co.*, No: 5:22-cv-290, 2022 WL 18776273, at *5 (M.D. Fl. Jan. 9, 2022) (distinguishing *Myers* where plaintiff "comprehensively described, in scientific detail, how DL-malic acid could function as an artificial flavor.").

Because nearly identical allegations have been found to be sufficient in similar citric acid cases (*see, e.g.*, *Squeo*, *Fried*, *Carbine*, *Hayes*, and *Ward*), the Court should likewise find that Plaintiff has adequately alleged the presence of artificial citric acid in the Product.

**B.    Reasonable Consumers Are Likely to be Deceived by the Product's Labels**

**1.    *Plaintiffs Plausibly Allege Citric Acid Derived from Chemical Processing Using Aspergillus Niger is Artificial***

Defendant argues Plaintiffs have not plausibly alleged that manufactured citric acid derived from chemical processing using *Aspergillus niger* is artificial and relies on federal regulations purportedly showing that citric acid is a natural ingredient. *See* MTD at 18. Defendant misrepresents the FDA regulations. For example, Defendant cites 21 C.F.R. § 184.1033(a) for the proposition that the FDA

-8-

considers citric acid to be natural. However, that regulation simply notes that citric acid "is a naturally occurring **constituent of plant and animal tissues.**" *Id.* (emphasis added). In other words, citric acid can occur naturally when it is a constituent of plant and animal tissues— *i.e.*, by extracting it from lemons. The same regulation goes on to state that citric acid may also be produced "by the solvent extraction process described in § 173.280 of this chapter for the recovery of citric acid from *Aspergillus niger* fermentation liquor." *Id.* 21 C.F.R. § 173.280 describes the solvent extraction process from *Aspergillus niger* and notes that synthetic substances are used in the manufacturing process and synthetic residues are left over in the final product:

> (a) The solvent used in the process consists of a mixture of n- octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine.
> ….
> (d) Residues of n- octyl alcohol and **synthetic** isoparaffinic petroleum hydrocarbons are removed in accordance with good manufacturing practice. Current good manufacturing practice results **in residues** not exceeding 16 parts per million (ppm) n- octyl alcohol and 0.47 ppm **synthetic** isoparaffinic petroleum hydrocarbons in citric acid.
>
> (e) Tridodecyl amine may be present **as a residue** in citric acid at a level not to exceed 100 parts per billion.

21 C.F.R. § 173.280 (emphasis added). Accordingly, the FDA regulations recognize the difference between naturally occurring citric acid that is a "constituent of plant" tissues like lemons and artificial citric acid that is produced by *Aspergillus niger* using synthetic chemicals. 21 C.F.R. § 184.1033(a); 21 C.F.R. § 173.280.

Plaintiffs' interpretation of these regulations is also consistent with the FDA's actions. For example, the FDA issued warning letters stating that certain products labeled as "natural" are misbranded because they contain artificial citric acid. *See* Compl., ¶ 21 & Ex. C (FDA warning letter stating "the addition of . . . citric acid to

-9-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

these products preclude use of the term 'natural' to describe this product."); *id*., at Ex. B (FDA warning letter stating product could not bear "100% Natural" or "All Natural" claims because it contains citric acid).

Courts, including the Ninth Circuit, emphasizing the FDA warning letters described above have held it plausible that "citric acid, as manufactured from *Aspergillus niger*, contains synthetic solvents, which would make the 'All-Natural' label misleading." *See Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143-144 (S.D.N.Y. 2021) ("the FDA material, at minimum, makes the plaintiff's allegations plausible rather than merely possible [citation], and as a result, the plaintiff has pleaded adequately that the 'All-Natural' statements are likely to be materially misleading."); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 533-34 (9th Cir. 2016) (citing FDA warning letters and finding "All Natural Fruit" representation plausibly misleading where product alleged to contain artificial citric acid).

Defendant also cites to 7 C.F.R. § 205.605(a)— a USDA regulation. MTD at 19. However, that regulation governs the use of the term "organic" in labeling and only applies to foods that bear an "organic" label. Here, Plaintiffs do not challenge "organic" labeling, nor is the Product labeled as "organic." *See* Compl., ¶¶ 15-16. Moreover, USDA regulations are not dispositive as to whether the Product's label claims are likely to mislead reasonable consumers. *See, e.g.*, *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015).

The *Carbine* court recently considered and rejected identical arguments. In *Carbine*, the defendant argued "assuming manufactured citric acid is used in the products in the manner described by Plaintiff, reasonable consumers would not consider manufactured citric acid artificial. *Carbine*, 2025 WL 501829, at *4. The defendant cited 21 C.F.R. § 184.1033(a) and 7 C.F.R. § 205.605(a), and argued that FDA and USDA regulations classify citric acid as natural. *See id*. The Court held:

The problem with this argument is that it ignores Plaintiff's

-10-

> allegations—Plaintiff alleges that citric acid may be naturally occurring or may be manufactured. The Court does not understand Plaintiff to take issue with the FDA's or USDA's characterizations of citric acid as being 'natural' *in certain circumstances not present here*.

*Id*. (emphasis in original). The Court further held plaintiff "***does*** contend that the manufactured citric acid contains something synthetic" and ultimately, "the Court cannot, at this motion-to dismiss stage, make such a fact-intensive determination about what a reasonable consumer would do when faced with facts about the use of manufactured citric acid in the products, as alleged." *Id*., at *5.

Defendant next argues, "the FDA has defined 'natural flavor' in its regulations as including 'fermentation products' – thus expressly contemplating the use of microorganisms such as *Aspergillus niger* in their production…" MTD at 20. However, the FDA defines "natural flavor" as containing "flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof…" 21 C.F.R. § 101.22(a)(3). Here, while citric acid *can be* extracted from natural fruits and vegetables, Plaintiffs cite the USDA, which states that citric acid extracted from citrus juice is "no longer commercially available." Compl., ¶ 18. Instead, citric acid "is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast)." *Id*. Then, "[c]itric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid." *Id*. As one USDA AMS reviewer stated, citric acid "commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." Compl., ¶ 19. Plaintiffs further explain, "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from *aspergillus niger* fermentation liquor" and "[t]he

-11-

citric acid that Defendant uses in the Product is produced through chemical solvent extraction **and contains residues of those chemical solvents**." Compl., ¶ 22 (emphasis added); *see also* 21 C.F.R. § 173.280 (FDA regulations noting byproducts from synthetic solvents are present in chemical extraction process of citric acid). As such, while citric acid can occur naturally, Plaintiffs allege that the manufactured citric acid in the Product is derived from heavy chemical processing and contains synthetic residues such that it is a synthetic flavoring and preservative ingredient. *See Carbine*, 2025 WL 501829, at *5 (rejecting argument that reasonable consumers would not be deceived by manufactured citric acid in the product where plaintiff "***does*** contend that the manufactured citric acid contains something synthetic").

Defendant next attacks the academic articles and FDA warning letters cited by Plaintiffs, arguing "[n]one of these documents represents the agencies' official policies…" and "carry no weight whatsoever." *See* MTD at 22. Defendant's factual challenges to the evidence cited in the Complaint are inappropriate on a Rule 12(b)(6) motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Further, Plaintiffs do not refer to the cited authorities to demonstrate "official policies." Compl., ¶ 21. Plaintiffs' cited articles and FDA letters merely support Plaintiffs' allegations.  *See Ward*, 2025 WL 919516, at *4 (cited articles "bolster [plaintiff's] allegation that manufactured citric acid is in the Product."); *Hayes*, 2024 WL 4766319, at *3 ("academic studies and articles . . . 'provide enough factual support to raise [Plaintiffs'] right to relief above a speculative level.'"); *Carbine*, 2025 WL 501829, at *3 (FDA letters "tend to establish that a reasonable consumer would find manufactured citric acid 'artificial.'"); *Mason*, 515 F. Supp. 3d at 143-144 ("the FDA material, at minimum, makes the plaintiff's allegations plausible rather than merely possible…").[2]

---

[2] Defendant contends, "Plaintiffs misrepresent the responses of the 1995 USDA AMS reviewers (Compl. ¶ 19), claiming that *all* reviewers classified citric acid as synthetic…" MTD at 22 (emphasis added). Defendant misreads the Complaint,

-12-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1
2

**C.    Reasonable Consumers are Deceived by the Use of Artificial Citric Acid in the Product**

3    Defendant contends that even if the citric acid in the Product was chemically
4  processed using *Aspergillus niger*, a reasonable consumer would not be deceived
5  and Plaintiffs fail to show "why a reasonable consumer would care about the
6  distinction in manufacturing processes for citric acid derived from citrus fruits as
7  opposed to fermentation via *Aspergillus niger*…" MTD at 22-24.[3] This argument
8  defies logic. Plaintiffs allege why reasonable consumers would care if a Product
9  labeled as having "No artificial flavors" and "No artificial preservatives" actually
10  contained the artificial flavoring and preservative ingredient citric acid. For example,
11  the Complaint alleges that residues of chemical solvents are contained in artificial
12  citric acid. Compl., ¶ 22. The Complaint also alleges, "[c]onsumption of
13  manufactured citric acid has been associated with adverse health events like joint
14  pain with swelling and stiffness, muscular and stomach pain, as well as shortness of
15  breath." *Id*., ¶ 17. The Complaint notes, "the potential presence of impurities or
16  fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant
17  difference that may trigger deleterious effects when ingested" and "repetitive
18  ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions
19  in susceptible individuals." *Id*., ¶ 23. Plaintiffs plausibly allege that reasonable
20  consumers would find it material that Defendant uses artificial citric acid in the
21  Product. *See Hayes*, 2024 WL 4766319, at *3 (rejecting argument that plaintiffs did

22
23  which provides a quote from "one of the USDA AMC reviewers" (Compl., ¶ 19)
and responses from "USDA AMC reviewers" (Compl., ¶ 20).

24  [3] Defendant's argument—that reasonable consumers would not be misled because
25  the citric acid in the Product is not derived from *Stachybotrys chartarum* (a
dangerous black mold), or because some molds, like *Penicillium*, are safely used in
26  products like cheese (*see* MTD at 22-23) is irrelevant. Plaintiffs allege that the citric
27  acid in the Product is derived from the black mold *Aspergillus niger*. Arguments
about other molds not referenced in the Complaint, and whether those molds are safe
28  or unsafe, have no bearing on the issues raised here.

-13-

not describe how citric acid derived from *Aspergillus niger* differs chemically from citric acid derived from fruits where plaintiffs alleged "[c]onsumption of manufactured citric acid has been associated with adverse health events…").[4]

Defendant next cites a Second Circuit case where plaintiffs alleged the phrase "fish oil" was misleading because "the omega-3s in the fish oil have been changed from their naturally occurring triglyceride form to ethyl-ester form." *See* MTD at 23, citing *Baines v. Nature's Bounty NY Inc*., No. 23-710-cv, 2023 WL 8538172, at *2 (2nd Cir. 2023). The *Baines* court held that plaintiffs did not plausibly allege "a reasonable consumer reading 'fish oil' on the front label of Defendants' product would be misled into thinking the supplement only contains omega-3s in triglyceride form." *Id*. By contrast, here, Plaintiffs plausibly allege that the Product's "No artificial flavors" and "No artificial preservatives" representations mislead reasonable consumers into believing that the Product contains no artificial flavors and no artificial preservatives. Compl., ¶ 14.

Courts routinely find it plausible that reasonable consumers could be misled by "no artificial flavors" and "no artificial preservatives" representations. *See*, *e.g.*, *Squeo*, 2024 WL 4557680, at *1, *6 (plaintiffs sufficiently alleged "No Artificial Colors, Flavors or Preservatives" representation would mislead reasonable consumer where plaintiffs alleged product contained artificial citric acid); *Carbine*, 2025 WL 501829, at *3 (same); *Ward*, 2025 WL 919516, at *4-5 (same); *Allred v. Frito-Lay North America, Inc*., No. 17-cv-1345, 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) ("if it is determined that the Product should have disclosed an 'artificial flavor,' then a reasonable consumer would be deceived by the Product's packaging, which clearly states 'No artificial flavors.'"); *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757, 2019 WL 1082562, at *9 (S.D. Cal. Mar. 7, 2019) (same).

---

[4] Defendant's factual challenge that reasonable consumers would not be deceived because artificial citric acid is *molecularly identical* to that extracted from citrus fruits" (MTD at 25) fails for these same reasons.

Defendant's remaining arguments are misplaced. Defendant argues even if the Product's citric acid is "made in the form Plaintiffs baselessly allege it is," it is made "through a natural process, not by humans mixing chemicals in a laboratory." MTD at 25. Not so. As explained above and in Plaintiffs' Complaint, the citric acid in the Product is "[c]ommercially produced," and "derived from heavy chemical processing" using "synthetic solvents." Compl., ¶¶ 17, 22. This is not a natural process, but a chemical, man-made process. *See id.*, ¶ 32; *Carbine*, 2025 WL 501829, at *3 (images of the chemical processes involved in the production of manufactured citric "tend to establish that a reasonable consumer would find manufactured citric acid 'artificial.'"). Defendant also argues that Plaintiffs "do not define what 'artificial' means to reasonable consumers." *See* MTD at 25. However, the Complaint alleges the "No artificial flavors" and "No artificial preservatives" representations mislead "reasonable consumers into believing that the Product is free from artificial flavors and preservatives." Compl., ¶ 14. These allegations are sufficient. *See, e.g., Squeo*, 2024 WL 4557680, at *6 ("Plaintiffs satisfy [the reasonable consumer] standard here — they allege that the chips' packaging represents that the chips do not contain artificial preservatives and that the chips nevertheless do, in direct contravention of that representation, contain an artificial preservative."). Defendant's argument that Plaintiffs' claims are conclusory are refuted in Section IV(A), *supra*, and Defendant's cited authorities are distinguishable for the same reasons. *See* MTD at 26.[5]

In any event, whether a reasonable consumer would be deceived "will usually be a question of fact not appropriate for decision on demurrer." *See Williams*, 552 F.3d at 938-39 (noting dismissal under Rule 12(b)(6) is only "appropriate" in "rare situation[s]") (citations omitted); *Tapia v. Coca-Cola Co.*, No. 22-cv-01362-HSG,

_____

[5] The cases cited by Defendant are also factually distinguishable, as they involve sugar, honey processed to remove pollen, allegations that cows were fed GMO crops, and challenges to "Made with Real Vegetables" claims—none of which are at issue in this case. *See id.*

-15-

2023 WL 2621346, at *4 (N.D. Cal. Mar. 23, 2023) ("At this stage, the Court cannot say as a matter of law ... that a reasonable consumer would not be deceived by the product label."); *Squeo*, 2024 WL 4557680, at *7 (same).

### D.    Plaintiffs Allege Actual Reliance

Defendant argues the Product's "no artificial flavors" and "no artificial preservatives" statements do not mean that the Product is free of artificial citric acid, because citric acid "can perform functions in products separate from acting as a flavoring or preservative agent, such as an emulsifier or pH balancer." MTD at 27. However, Plaintiffs allege that citric acid is used as a flavoring and preservative ingredient in the Product, such that the Product's "No artificial flavors" and "No artificial preservatives" representations are false and misleading. *See* Compl., ¶¶ 2-3, 12, 14. To the extent Defendant argues the citric acid in the Product functions as an emulsifier or pH balancer, and not a flavoring or preservative ingredient (Defendant does not make this argument), this is an issue of fact that cannot be determined at this stage. *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) (whether malic acid is used "as a flavoring agent rather than a pH balancing agent are issues of fact that cannot be resolved at the pleading stage.").

Defendant also argues, "if Plaintiffs were actually seeking to avoid citric acid as an ingredient, they would not have purchased the Products, because citric acid is disclosed…" MTD at 27. The Complaint does not allege that Plaintiffs "wish to avoid citric acid as an ingredient." Plaintiffs allege they "saw and relied on the 'No artificial flavors' and 'No artificial preservatives' claims on the front label of the Product" and "would not have purchased the Product, or would have paid less for the Product, had they known that the Product contains an artificial flavoring and preserving ingredient in direct contradiction to the 'No artificial flavors' and 'No artificial preservatives' statements on the Product's front label." *See* Compl., ¶ 12. Further, the Product's rear label listing citric acid as an ingredient does not shield Defendant from liability. The Ninth Circuit made clear that "reasonable consumers"

-16-

should not "be expected to look beyond misleading representations on the front of the box to discover the truth from" the products' side or rear labels. *Williams*, 553 F.3d at 939-40; *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. July 17, 2024) ("[I]f a product's front label is plausibly misleading to reasonable customers, then the court does not consider the back label at the pleadings stage.").

Defendant's reliance on *McGinity* and *Moore* is misplaced, as those cases only held that a product's rear label may be considered where the front label is ambiguous. *See* MTD at 28, citing *McGinity v. P&G*, 69 F.4th 1093 (9th Cir. 2023) and *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). Here, the Product's front label is affirmatively misleading and does "not include the sort of inherent ambiguity which might put a consumer on notice to investigate the meaning of the label further." *See Caldwell v. Nordic Naturals, Inc.*, 709 F.Supp.3d 889, 901 (N.D. Cal. 2024); *Whiteside*, 108 F.4th at 781 (distinguishing *McGinity*; finding defendant precluded from relying on the back label because plaintiff plausibly alleged front label made unambiguous representation).

Notwithstanding, a review of the rear label would not put reasonable consumers on notice that the Product contains an artificial flavoring and preservative ingredient without consumers having background scientific knowledge of citric acid. *See Fried*, 753 F.Supp.3d at 1153 ("Even if reasonable consumers looked to the back label of one of Defendant's Products to learn about the ingredients, they 'could not know that the "citric acid" listed among the ingredients was an artificial, industrially-manufactured chemical,' especially because citric acid occurs naturally in fruits as well.").

### E.    Plaintiffs Adequately State Claims for Breach of Warranty

Defendant argues Plaintiffs' claim for breach of express warranty should be dismissed for the same reasons as her consumer protection claims. MTD at 28. For the same reasons described above, Defendant's argument fails. *See, e.g.*, *Squeo*, 2024 WL 4557680, at *9 ("In requesting dismissal of the breach-of-express warranty

-17-

claim, Defendants argue only that the claim must fail for the same reasons the consumer-protection claims fail. [] Because those claims survive the Motion, the breach claim survives as well."); *Carbine*, 2025 WL 501829, at *5 (same); *Fried*, 753 F.Supp.3d at 1153 (same); *Ward*, 2025 WL 919516, at *6 (same).

Defendant contends Plaintiffs' claim for implied warranty fails because Plaintiffs did not plead the Product fails to conform to the promises or affirmations of fact on the label. MTD at 28. Not so. The label warrants that the Product contains no artificial flavors and no artificial preservatives, and Defendant breaches this warranty by including the artificial flavoring and preservative ingredient citric acid. Compl., ¶ 14. Plaintiffs have adequately alleged breach of implied warranty. *Fried*, 753 F.Supp.3d at 1153-54 (plaintiffs adequately alleged breach of implied warranty where defendant has not conformed with its affirmation that the products are all natural); *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 924 (E.D. Cal. 2020) ("Because the court finds that plaintiff has alleged a valid express warranty claim, so too does it conclude that plaintiff has asserted a cognizable claim for breach of an implied warranty.").

## F.    Plaintiffs State a Claim for Misrepresentation/Fraud

Defendant argues, "[b]ecause the Products' ingredient statement disclosed their ingredients, Plaintiffs cannot plausibly allege the Products' packaging contained any intentional misrepresentation." MTD at 29. However, Defendant prominently placed on the Product's front label that the Product contains "no artificial flavors" and "no artificial preservatives." These representations are false because the Product contains the artificial flavoring and preservative ingredient citric acid. *Id*., ¶ 3. Listing citric acid as an ingredient does not dispel the impression formed by the front label that the Product contains "No artificial flavors" and "No artificial preservatives." *See Fried*, 753 F.Supp.3d at 1153.

## G.    Plaintiffs Have Standing to Seek Injunctive Relief

Defendant argues Plaintiffs "are aware of the ingredients in the Products," and

-18-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

thus are "at no risk of future harm and therefore lack standing to seek injunctive relief." MTD at 29-30. The Ninth Circuit has rejected this argument that a "previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction" in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966-69 (9th Cir. May. 9, 2018) ("*Davidson*"). "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*., at 969. A plaintiff need only make "plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to…" *Davidson*, 889 F.3d at 969–70.

Plaintiffs' allegations of the threat of future harm align precisely with *Davidson*. Plaintiffs allege they "desire to, and would, purchase the Product again if the label of the Product was accurate and if the Product truthfully contained 'No artificial flavors' and 'No artificial preservatives.'" Compl., ¶ 13. "However, as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Product's labeling when deciding in the future whether to purchase the Product." *Id*. This harm is sufficient to confer standing for injunctive relief. *Davidson*, 889 F.3d at 967; *see also Roper*, 510 F.Supp.3d at 909, 915-916 (in artificial citric acid case, allegations of future harm "fit squarely into the categories recognized by the Ninth Circuit.") (citing *Davidson*, 889 F.3d at 969 and *Moore v. Mars Petcare U.S., Inc*., 966 F.3d 1007, 1021 n.13 (9th Cir. 2020)); *see also Lozano v. Walmart, Inc.*, No. CV 23-4500, 2024 WL 412606, at *4 (C.D. Cal. Feb. 1, 2024) (standing for injunctive relief in artificial malic acid case); *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757, 2019 WL 1082562, at *13 (S.D. Cal. Mar. 7, 2019) (plaintiff "still faces future injury because he will not be able to rely on Defendants' claims about its

product's ingredients."); *Allred*, 2018 WL 1158885, at \*6-7 (rejecting argument that "because Plaintiffs now claim to know that Pringles allegedly contain artificial ingredients, they are unlikely to be deceived again").

Further, the Ninth Circuit has held an ingredient list is not intended to "provide a shield for liability for the deception" on the front label. *See Williams*, 553 F.3d at 939; *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at \*5 (N.D. Cal. Apr. 25, 2018) (rejecting argument that plaintiff could read labels in the future to determine whether products were "all natural"); *Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993, 2020 WL 1929368, \*6 (N.D. Cal. Apr. 21, 2020) (noting "onus [is not] on plaintiff to consult the ingredient list").

Defendant's authorities on this issue are distinguishable. For example, the plaintiffs in *KLN Enterprises, Prescott, Joslin, Campion*, and *Cattie* did not allege that they "want to or intend to purchase the Products in the future." *Trammell v. KLN Enterprises, Inc.*, 2024 WL 1722243, at \*5 (S.D. Cal. Apr. 22, 2024) ("<u>Davidson</u> is distinguishable because the plaintiff in that case alleged a desire to purchase the products again. [] Plaintiff failed to do so here."); *Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 WL 3035798, at \*6 (N.D. Cal. June 4, 2020) ("Plaintiffs have not alleged that they would purchase the Product absent the alleged misleading labeling."); *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, 2019 WL 5690632, at \*2-5 (N.D. Cal. 2019) (plaintiffs "d[id] not allege they want to or intend to purchase the Products in the future."); *Campion v. Old Republic Home Protections Co.*, 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012) (plaintiff "has no intention of purchasing another home warranty plan from Defendant…"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) ("the SAC contains no allegations suggesting [plaintiff] intends to buy linens from Wal–Mart.com in the future.").[6] *See* MTD at 29-30. This alone is fatal to an injunctive relief claim under *Davidson*. *See*

---

[6] *Campion* (2012) and *Cattie* (2007) were also decided before the Ninth Circuit's decision in *Davidson* (2018) and are therefore not controlling.

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Davidson*, 873 F.3d at 1115. By contrast, here, Plaintiffs allege that they "desire to, and would, purchase the Product again if the label of the Product was accurate…" Compl., ¶ 13.

In *Jackson v. Gen. Mills, Inc*., there was no threat of future injury because the front labels of the products were accurate. No. 18-cv-2634-LAB (BGS), 2019 WL 4599845, at *5 (S.D. Cal. Sept. 23, 2019) (plaintiff failed to allege facts that she was misled; finding weight marked on the front of cereal boxes accurate). Dissimilarly here, the Product's front label "No artificial flavors" and "No artificial preservatives" representations are not accurate and are misleading. Compl., ¶ 14.

## H.    Plaintiffs' Nationwide Class Claims Should Be Addressed at Class Certification

Defendant next argues Plaintiffs' nationwide class based on the laws of other states should be dismissed. MTD at 30. As an initial matter, district courts sitting in diversity are "required to apply the substantive law of the state in which it sits, including choice-of-law rules." *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982). Notwithstanding, Defendant's nationwide class arguments are premature because this issue is to be considered "in the context of a class certification motion and not a motion to dismiss." *Fitzhenry-Russell v. Coca-Cola Co*., No. 5:17-cv-00603, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017); *Plotts v. Am. Honda Motor Co.*, No. CV 22-04529, 2023 WL 4843342, at *13 (C.D. Cal. June 9, 2023) (This argument "is a matter of typicality, adequacy, and predominance under Rule 23, not Article III standing . . ."); *Battle v. Taylor James, LLC*, 607 F.Supp.3d 1025, 1041 (C.D. Cal. 2022) ("[T]he court agrees with recent Ninth Circuit precedent analyzing this issue at the class certification stage under Rule 23.") (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (adopting "the class certification approach"); *Vance v. Church & Dwight Co.*, No. 2:22-cv-00044, 2023 WL 2696826, at *6 (E.D. Cal. Mar. 29, 2023) ("[C]laims under the laws of non-California states is better suited for a motion for class certification."); *Yan Mei Zheng-Lawson v. Toyota*

-21-

1  *Motor Corp.*, No. 17-cv-06591, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018)

2  ("premature to address those issues at this early stage[.]").

3      Here, deferring ruling on class-related issues "[e]arly in the pleadings stage"

4  is prudent because "neither the court nor the litigants are sure yet which facts and

5  legal issues are in dispute." *Precht v. Kia Motors Am., Inc*., No. SA CV 14-1148,

6  2014 WL 10988343, at *14 (C.D. Cal. Dec. 29, 2014). The precise scope of the

7  classes and subclasses should be decided at class certification after the development

8  of a factual record in discovery.

9              **V.    CONCLUSION**

10      Defendant's motion to dismiss should be denied. If the Court dismisses any

11  portion of the complaint, Plaintiffs respectfully request leave to amend. *Eminence*

12  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

13

14   Dated: April 17, 2025              CROSNER LEGAL, P.C.

15

16                          By:    */s/ Lilach H. Klein*

17                              Lilach H. Klein

18

19                          9440 Santa Monica Blvd. Suite 301
                            Beverly Hills, CA 90210
20                          Tel: (866) 276-7637
                            Fax: (310) 510-6429
21                          lilach@crosnerlegal.com
22                          *Attorneys for Plaintiffs and the Proposed*
                            *Class*
23

24

25

26

27

28

-22-

*Taylor, et al. v. Walmart, Inc.*, Case No. 5:25-CV-00186-KK-SHK
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.


Dated: April 17, 2025                           CROSNER LEGAL, P.C.


By:       */s/  Lilach H. Klein*
_____
LILACH H. KLEIN

-23-