UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-186-KK-SHKx** | Date: | June 4, 2025 |
|---|---|---|---|

| Title: | ***Kaitlyn Taylor et al. v. Walmart, Inc.*** |
|---|---|


Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     (In Chambers) Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss the Complaint [Dkt. 11]**


I.
**INTRODUCTION**

On January 23, 2025, plaintiffs Kaitlyn Taylor ("Taylor") and Justin Alicea ("Alicea") (collectively, "Plaintiffs") filed the operative Class Action Complaint ("Complaint") against defendant Walmart Inc. ("Defendant"), raising consumer fraud claims related to Defendant's product, the Great Value Macaroni & Cheese Original Microwavable Cup ("Product").  ECF Docket No. ("Dkt.") 1, Complaint ("Compl.").  On March 28, 2025, Defendant filed the instant Motion to Dismiss ("Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 11, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); L.R. 7-15.  For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.


II.
**BACKGROUND**

A.     **PROCEDURAL HISTORY**

On January 23, 2025, Plaintiffs filed the operative Complaint against Defendant.  Compl. The Complaint sets forth the following claims:

(1)   **Cause of Action One:** Violation of the California's Consumer Legal Remedies Act ("CLRA") under California Civil Code Section 1750;

(2)   **Cause of Action Two:** Violation of the California's Unfair Competition Law ("UCL") under California Business and Professions Code Section 17200;

(3)   **Cause of Action Three:** Violation of the False Advertising Law ("FAL") under California Business and Professions Code Section 17500;

(4)   **Cause of Action Four:** Breach of Express Warranty;

(5)   **Cause of Action Five:** Breach of Implied Warranty;

(6)   **Cause of Action Six:** Negligent Misrepresentation; and

(7)   **Cause of Action Seven:**  Intentional Misrepresentation/Fraud.

Compl. ¶¶ 57-127.

On March 28, 2025, Defendant filed the instant Motion, arguing Plaintiffs lack Article III standing and statutory standing under the CLRA and fail to state a claim for Causes of Action One through Seven.

On April 17, 2025, Plaintiffs filed an Opposition.  Dkt. 15.  On April 24, 2025, Defendant filed a Reply.  Dkt. 19.

This matter, thus, stands submitted.

**B.   RELEVANT FACTS**

The Complaint alleges the following facts:

Defendant is a Delaware corporation and "was the manufacturer, distributor, marketer, and seller of the Product".  Compl. ¶ 9.  Plaintiff Taylor purchased the Product at a Walmart store located in Hemet, California, throughout the class period, with the most recent purchase in or around October 2024.  Id. ¶ 10.  Plaintiff Alicea purchased the Product at a Walmart store located in Oroville, California, throughout the class period, with the most recent purchase in 2024.  Id. ¶ 11.

The front label of the Product "prominently states that the Product contains 'No artificial flavors' and 'No artificial preservatives'".  Id. ¶ 14.  However, the rear label of the Product states it contains citric acid.  Id. ¶ 16.  Plaintiffs allege citric acid is an "artificial flavoring and preservative ingredient."  Id.

Plaintiffs further allege "Defendant uses artificial manufactured citric acid in the Product" that is "a synthetic form of citric acid that is derived from heavy chemical processing."  Id. ¶¶ 16-17.  Specifically, the commercial manufacturing process of citric acid uses "a type of black mold called *Aspergillus niger*," because it is not "commercially feasible to use natural citric acid extracted from fruits."  Id. ¶¶ 17-18.  In support of their allegations, Plaintiffs cite, among other things, scientific journals, id. ¶¶ 17, 23, FDA regulations, id. ¶ 22, letters and reports by the FDA and USDA, id. ¶¶ 18, 21, 31-36, and images of chemical processes used to create citric acid, id. ¶ 32.  Plaintiffs also allege "[c]onsumption of manufactured citric acid has been associated with adverse

health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath." Id. ¶ 17.

Plaintiffs allege they "relied on Defendant's 'No artificial flavors' and 'No artificial preservatives' labeling statements" when purchasing the Product. Id. ¶ 37. Plaintiffs claim they "would not have purchased Defendant's Product, or would have paid less for the Product, if they had known the Product actually contains an artificial flavoring and preservative ingredient." Id. ¶ 40. Further, Plaintiffs allege "as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Product's labeling when deciding in the future whether to purchase the Product." Id. ¶ 13.

Plaintiffs, thus, seek to bring this class action on behalf of individuals "who purchased the Products . . . for personal and household use and not for resale within the applicable statute of limitations."[1] Id. ¶ 43.

### III.
### LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor, Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022). The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A

---

[1] The putative class is defined as:

**The Nationwide Class**

All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**The California Subclass**

All California citizens who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

Compl. ¶ 43.

claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.   The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Further, fraud-based allegations in federal court are also governed by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and ellipses omitted).  Put differently, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Id. (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997); see also Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

**IV.**
**DISCUSSION**

**A.     PLAINTIFFS HAVE STANDING TO SUE**

**1.     Applicable Law**

The "irreducible constitutional minimum" of Article III standing consists of: (1) injury in fact, (2) causation, and (3) redressability.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quotation omitted).  First, a plaintiff must show they "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]"  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Second, the plaintiff must show "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Id. (cleaned up).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. at 561 (internal quotation marks omitted).

Further, a CLRA action may only be brought by a consumer "who suffers any damage as a result of the use or employment by any person of a method, act, or practice".  Cal. Civ. Code § 1780(a).  Courts have interpreted the provision as requiring the plaintiff to "plead and prove actual reliance in accordance with well-settled fraud principles."  Konik v. Time Warner Cable, No. CV 07-763-SVW-RZx, 2010 WL 11549435, at *5 (C.D. Cal. July 19, 2010) (citations omitted); see also Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) ("consumers seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance on the misrepresentation and harm.") (quotation and citations omitted).  Specifically, "plaintiffs in a CLRA action must show not only that a defendant's conduct was deceptive but also that the deception caused them harm."  Id. (citing Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 809 (2007), *disapproved of on other grounds by* Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011)) (citations and internal brackets omitted).

///

2.        **Analysis**

a.        **Plaintiffs Sufficiently Allege Facts to Confer Article III Standing**

Here, the Court finds Plaintiffs have alleged facts sufficient to confer Article III standing. First, Plaintiffs allege they "would not have purchased Defendant's Product, or would have paid less for the Product, if they had known the Product actually contains an artificial flavoring and preservative ingredient." Id. ¶ 40. Second, as a result, Plaintiffs allege they "suffered injury in fact when they spent money to purchase the Product they would not have purchased, or would have paid less for, absent Defendant's misconduct." Id. ¶ 14. Third, Plaintiffs seek "restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition" and injunctive relief. Id. ¶ 80. Because "[p]urchasing a product based on misrepresentations or omissions is sufficient injury to confer standing," Plaintiffs have alleged facts sufficient to confer standing with respect to the Product they purchased. Overton v. Bird Brain, Inc., No. SACV 11-1054 DOC-ANx, 2012 WL 909295, at *3 (C.D. Cal. Mar. 15, 2012); see also Park v. Knudsen & Sons, Inc., No. CV 14-7845-DMG-JPRx, 2015 WL 13916262, at *5-6 (C.D. Cal. Sept. 25, 2015) (finding plaintiff sufficiently alleged facts to confer standing by alleging she would not have purchased the juice products "but for the 'No Sugar Added' label.").

Defendant also argues Plaintiffs, who are residents of California and only purchased the Products in California, lack standing to assert claims on behalf of a nationwide class enforcing the laws of other states under Article III of the Constitution. Mot. at 30-31. The Ninth Circuit has held, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." Melendres v. Arpaio, 784 F.3d 1254, 1262 (9th Cir. 2015). As discussed above, plaintiffs have individual standing to bring their claims under California law, therefore, the standing inquiry is concluded. See Batista v. Irwin Nats., No. CV 20-10737-DMG-Ex, 2021 WL 6618543, at *2 (C.D. Cal. Sept. 27, 2021) (rejecting the defendant's argument the plaintiff lacks standing to represent absent putative class members who are citizens of other states as to the plaintiff's common law claims because "any dissimilarities between [the plaintiff's] claims and those pertaining to out-of-state putative class members should be addressed at class certification, not the pleadings stage"); see also Tovmasyan v. Target Corp., No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020, at *3 (C.D. Cal. May 2, 2025).[2] Thus, the Court finds Plaintiff has Article III standing.

---

[2] The Court recognizes since the ruling of Melendres, "[c]ourts in the Ninth Circuit have been split on whether a named plaintiff in a putative class action has standing to assert claims under the laws of states where the named plaintiff does not reside or was injured." Sultanis v. Champion Petfoods USA Inc., No. 21-CV-00162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021) (citations omitted). Further, a court may exercise its discretion "to hold that Plaintiff . . . cannot represent unnamed class members in states outside of California[,]" "whether it be cast as a standing question *or an early adjudication of prospective class certification*[.]" Id. at *6 (citation and quotation marks omitted) (emphasis in the original). Specifically, in situations where there are "substantial variations in the consumer protection laws of the [ ] states at issue, including whether notice, intent, reliance, or causation are required, as well as whether a three-, four-, five-, or six-year statute of limitations applies[,]" "no amount of discovery will change the fact that the consumer protection laws of the [ ] states at issue . . . are so substantively different that it would be exceedingly difficult to certify a class that satisfies the adequacy, typicality, or predominance requirements particularly with only [the plaintiff] at the helm." Id. at *7 (internal citations omitted). Accordingly, courts have dismissed

####    b.    Plaintiffs Sufficiently Allege Facts to Satisfy the Standing Requirement Under the CLRA

Here, Plaintiffs sufficiently allege they suffered damages as a result of the mislabeling of the Product.  As alleged in the Complaint, Plaintiffs "relied on Defendant's 'No artificial flavors' and 'No artificial preservatives' labeling statements" and purchased the Product.  Compl. ¶ 37.  Further, Plaintiffs allege they "would not have purchased Defendant's Product, or would have paid less for the Product, if they had known the Product actually contains an artificial flavoring and preservative ingredient."  Id. ¶ 40.  Courts have found similar allegations sufficiently state actual reliance.  See Henderson v. Gruma Corp., No. CV 10-04173-AHM-AJWx, 2011 WL 1362188, at *6 (C.D. Cal. Apr. 11, 2011) (finding the plaintiffs have sufficiently alleged actual reliance under the CLRA by alleging they read and relied on the defendant's misleading labels and purchased the product); see also Park, 2015 WL 13916262, at *10 (finding the plaintiff sufficiently alleged the "No Sugar Added" labeling on the products caused her to believe the products contained less sugar than other juice products and she relied on the label to purchase the products).[3]

Thus, Plaintiffs sufficiently allege they relied on the "No artificial flavors" and "No artificial preservatives" labels at the point of purchase and comply with the statutory standing requirement under the CLRA.  The Court, thus, finds Plaintiffs have standing under the CLRA.

* * * *

Accordingly, Defendant's Motion to Dismiss the Complaint for lack of standing is **DENIED**.

///

///

---

plaintiffs' claims on behalf a multi-state class and on behalf of a nationwide class under Federal Rule of Civil Procedure 23 at the pleading stage where the named plaintiffs in the putative class action assert claims under the laws of states where they do not reside or were injured.  See generally id.; Phan v. Sargento Foods, Inc., No. 20-CV-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021). While the Court is skeptical as to whether Plaintiffs may ultimately satisfy the requirements under Federal Rule of Civil Procedure 23 on behalf of a nationwide class, the Court will consider this issue at class certification.

[3] Defendant argues because citric acid may be used as "an emulsifier or pH balancer" other than acting as a flavoring and preservative agent, therefore, "it is impossible to read the challenged label claims as meaning the Products are free of 'artificial' citric acid."  Mot. at 27-28.  Further, Defendant argues because "citric acid is disclosed," Plaintiffs were informed of the presence of it at the time of purchase, and therefore, Plaintiffs, as reasonable consumers, would not have purchased the Product had they intended to avoid the ingredient.  Id.  However, "[t]o the extent the injury alleged is reliance on misleading [labeling] . . . whether plaintiff was actually misled is a factual question that is an inappropriate basis for dismissal at this stage."  Ivie v. Kraft Foods Glob., Inc., No. C-12-02554-RMW, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2013) (citations omitted). Defendant's arguments, therefore, miss the mark.

**B.    PLAINTIFFS STATE CLAIMS IN CAUSES OF ACTION ONE THROUGH THREE FOR FALSE AND MISLEADING ADVERTISING**

**1.    Applicable Law**

The UCL, FAL, and CLRA "all prohibit unlawful, unfair, or fraudulent business practices." Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits false or misleading advertising, which "is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The CLRA prohibits specific "unfair methods of competition and unfair or deceptive acts . . . intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

"Courts analyze claims under these [three] statutes together when predicated on allegedly false and misleading advertising." Squeo v. Campbell Soup Co., No. 24-CV-02235-SVK, 2024 WL 4557680, at *3 (N.D. Cal. Oct. 22, 2024) (citations omitted). Claims under the UCL, FAL, and CLRA "are governed by the 'reasonable consumer' standard." McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)).

Under the reasonable consumer standard, plaintiffs must "show that members of the public are likely to be deceived." Williams, 552 F.3d at 938 (internal quotation marks and citation omitted). The reasonable consumer standard requires "more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Ebner, 838 F.3d at 965 (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)). Rather, the standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. (citation omitted). The UCL, FAL, and CLRA prohibit both "advertising which is false" and "advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams, 552 F.3d at 938 (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)).

**2.    Analysis**

**a.    Plaintiffs Sufficiently Allege the Product Contains Artificial Citric Acid**

Defendant makes several arguments for dismissal that apply equally to the three claims under the UCL, FAL, and CLRA. See Mot. at 12-22.

First, Defendant argues Plaintiffs fail to specifically allege the citric acid used in the Product "was produced in any particular way" and "in a way that makes it 'artificial.'" Mot. at 14-17. Here, Plaintiffs have sufficiently alleged the Product contains artificially produced citric acid. Specifically, as alleged in the Complaint, commercial citric acid is "a synthetic form of citric acid that is derived from heavy chemical processing" involving a modified "type of black mold called *Aspergillus niger*." Compl. ¶ 17. This method allegedly accounts for roughly 99% of global citric acid production since 1919. Id. (quoting Iliana E. Sweis, et al., *Potential Role of the Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States: A Series of Four Case*

*Reports, Toxicology Reports* 5:808-812 (2018)).  Further, Plaintiffs cite letters by the FDA allegedly
claiming citric acid is not natural, id. ¶ 21, and provide general depictions and images of the chemical
processes used to manufacture citric acid, id. ¶ 32.  Courts in this circuit have previously found
materially identical allegations to be sufficient to support the inference that the Product contains
manufactured citric acid.  Carbine v. Target Corp., No. CV 24-03721-MWF-AJRx, 2025 WL 501829,
at *3-4 (C.D. Cal. Feb. 13, 2025) (finding "a sufficient link between manufactured citric acid and
Defendant's products" based on materially identical allegations); see also Squeo, 2024 WL 4557680,
at *4 (finding "it is highly likely that the citric acid included in the chips was artificially produced"
based on materially identical allegations) (emphasis in the original); Ringler v. J.M. Smucker Co., No.
2:25-cv-01138-AH-KESx, 2025 U.S. Dist. LEXIS 91200, at *8 (C.D. Cal. May 13, 2025) (finding the
plaintiff "has sufficiently alleged that the Products contain artificial citric acid" based on materially
identical allegations).[4]  Thus, accepting all factual allegations in the Complaint as true and drawing all
reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs have sufficiently alleged the
Product contains citric acid that is artificially manufactured.

###   b.   Plaintiffs Sufficiently Allege Reasonable Consumers Could Be Misled by the Product's Labeling

Second, Defendant argues Plaintiffs fail to allege reasonable consumers are likely to be
misled.  Mot. at 22-26.  However, "courts have made clear in case after case, whether a reasonable
consumer would be materially deceived is a question of fact that is not generally appropriate for
determination on a motion to dismiss."  Sims v. Campbell Soup Co., No. EDCV 18-668-PSG-SPx,
2018 WL 7568640, at *6 (C.D. Cal. Sept. 24, 2018) (citing Williams, 552 F.3d at 937-38).
Moreover, "the Ninth Circuit has made clear that granting a motion to dismiss on this question will
only be appropriate in 'rare situation[s].'"  Id. (citing Williams, 552 F.3d at 939).

Here, Plaintiffs allege they were misled because the Product represents it contains "No
artificial flavors" and "No artificial preservatives," yet, the Product contains citric acid that is
allegedly artificially manufactured.  Compl. ¶¶ 14, 16-17.  Specifically, Plaintiffs allege it is not
"commercially feasible to use natural citric acid extracted from fruits" due to the lack of commercial
availability of citric acid from citrus juice.  Id. ¶ 18.  Plaintiffs also support their allegation that
commercial citric acid is artificial by citing scientific journals, id. ¶¶ 17, 23, FDA regulations, id. ¶ 22,
letters and reports by the FDA and USDA, id. ¶¶ 18, 21, 31-36, and images of chemical processes
used to create citric acid, id. ¶ 32.  Further, Plaintiffs allege "[f]oods bearing 'free-from' claims are

---

[4] Defendant analogizes Plaintiffs' allegations to those in Pelayo v. Conagra Brands, Inc., No.
23-CV-05833-JD, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024), Osborne v. Kraft Foods Grp.,
Inc., No. 15-cv-02653-VC (N.D. Cal. Oct. 15, 2015), and Tarzian v. Kraft Heinz Foods Co., No. 18
C 7148, 2019 WL 5064732, at *1 (N.D. Ill. Oct. 9, 2019), where the courts found allegations
regarding the use of manufactured citric acid insufficient to state a claim.  See Mot. at 15-17.
However, courts in this circuit have explicitly rejected such arguments in cases with materially
identical allegations as the allegations in the operative Complaint here.  See Carbine, 2025 WL
501829, at *4 (finding the instant case distinguishable from Osborne because the plaintiff's
allegations "[do] not merely say that the labels are misleading because the products contain artificial
preservatives—Plaintiff goes several steps further in alleging the specific preservative that is artificial,
the chemical process that renders it artificial, its use in Defendant's products, and its prevalence in
the food industry more broadly."); see also Squeo, 2024 WL 4557680, at *4 (distinguishing Pelayo
and Tarzian from the instant case because the allegations in those cases were more generalized)
(citing Fried v. Snapple Beverage Corp., 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024)).

increasingly relevant to Americans, as they perceive the Product as closely tied to health . . . [and] [a]mong the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)." Id. ¶ 38.  Therefore, drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged reasonable consumers could be misled.  See Hilsley v. Gen. Mills, Inc., 376 F. Supp. 3d 1043, 1049 (S.D. Cal. 2019) (finding the plaintiff sufficiently "alleged facts supporting a reasonable inference that 'no artificial flavor' statement is material to consumers" by alleging the defendant used artificial malic acid despite labeling it as a product with "no artificial flavors" and was "naturally flavored"); see also Young v. Neurobrands, LLC, No. C 18-05907-JSW, 2019 WL 13247942, at *5 (N.D. Cal. Feb. 19, 2019) (noting "whether or not a reasonable consumer would be misled 'is a question of fact not appropriate for determination on a motion to dismiss'" and finding the plaintiffs sufficiently alleged their fraud claim that the defendant's product was deceptive to reasonable consumers by alleging the products contained malic acid despite "the label clearly designat[ing] that the Products use only natural flavors.") (citing Williams, 552 F.3d at 938) (internal brackets omitted).

Defendant also argues even if the citric acid in the Product was produced using a fermentation process involving *Aspergillus niger*, such microbial fermentation is considered "natural" under regulatory and scientific standards, and the resulting citric acid is molecularly identical to that extracted from citrus fruits.  Mot. at 17-21.  Defendant, therefore, argues Plaintiffs fail to allege a reasonable consumer would find the Product's labeling and packaging misleading, as there is no distinction for a reasonable consumer between citric acid produced via fermentation and that extracted from citrus fruits.  Id. 22-26.

Defendant supports this argument by first disputing whether the alleged fermentation process involving the use of *Aspergillus niger* is natural or artificial, id. at 18-21, and by challenging Plaintiffs' interpretations of FDA regulations and agency reports from the FDA and USDA concerning the categorization of citric acid produced via the fermentation process, id. at 21-22.  However, at this stage, "[t]hese arguments do not counter the reasonable inference that the [Product] contain[s] artificially produced citric acid stemming from Plaintiffs' allegations about the prevalence of artificially produced citric acid and lack of commercial feasibility of using naturally produced citric acid."  Squeo, 2024 WL 4557680, at *5 n.4.  Moreover, "Plaintiffs do not simply assume that the citric acid in the [Product] was artificially produced but provide a supported, factual basis for that conclusion."  Id. at *5.  Further, "'questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.'"  Fried, 753 F. Supp. 3d at 1153 (quoting Roper v. Big Heart Pet Brands, Inc., 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020)); see also Carbine, 2025 WL 501829, at *5 ("The important point is that the Court cannot, at this motion-to-dismiss stage, make such a fact-intensive determination about what a reasonable consumer would do when faced with facts about the use of manufactured citric acid in the products, as alleged.").  Hence, the Court need not delve into these arguments in resolving the Motion.

Accordingly, the Court finds Plaintiffs sufficiently state a claim for Causes of Action One through Three, and the Motion is **DENIED** as to Plaintiffs' Causes of Action One through Three.

///

///

## C.      PLAINTIFFS STATE CLAIMS IN CAUSES OF ACTION FOUR AND FIVE FOR BREACH OF WARRANTY

### 1.      Applicable Law

"To prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010).  Further, a contract for the sale of goods implies "a warranty that the goods shall be merchantable," Cal. Com. Code § 2314(1), meaning that the goods are "fit for the ordinary purposes for which such goods are used," id. § 2314(2)(c).  The implied warranty of merchantability "is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." Martinez v. Metabolife Int'l, Inc., 113 Cal. App. 4th 181, 189 (2003).

### 2.      Analysis

Here, the Court finds Plaintiffs sufficiently state a claim for Causes of Action Four and Five.

Defendant first argues Plaintiffs' claim of express warranty fails because Plaintiffs fail to state the fraud claims under the UCL, FAL, and CLRA.  Mot. at 28.  However, as discussed above, the Court finds Plaintiffs have sufficiently stated a claim for false or misleading advertising.  See generally section IV.B.  Further, Plaintiffs allege an express warranty was issued "by representing to consumers at the point of purchase that the Product contained 'No artificial flavors' and 'No artificial preservatives.'" Compl. ¶ 93.  Plaintiffs also allege they "reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Product, including the representation that the Product contained 'No artificial flavors' and 'No artificial preservatives.'" Id. ¶ 94.  Lastly, Plaintiffs allege "the Product does not conform to Defendant's representations because the Product contains an artificial flavor and preservative ingredient called citric acid." Id. ¶ 96.  Thus, Plaintiffs have sufficiently alleged a claim for express warranty.  See Carbine, 2025 WL 501829, at *5 (finding the plaintiff has adequately stated a claim as to breach of warranty).

Defendant also argues Plaintiffs fail to state a claim of implied warranty because Plaintiffs fail to allege the Product was unmerchantable, as the Product is fit for consumption and, therefore, fit for its ordinary purpose.  Mot. at 28.  However, because Plaintiffs have sufficiently alleged the Product contains artificial citric acid despite being labeled as "No artificial flavors" or "No artificial preservatives", see Section IV.B.2.a, they have adequately alleged the Product does not conform to the promises or affirmations contained on the container or label. See Fried, 753 F. Supp. 3d at 1153-54 (finding "Plaintiff has plausibly alleged that Defendant has not conformed with its affirmation that its Products are "ALL NATURAL").  Thus, Plaintiffs sufficiently state a claim for implied warranty.

Accordingly, the Motion is **DENIED** as to Plaintiffs' Causes of Action Four and Five.

///

///

Case 5:25-cv-00186-KK-SHK   Document 22   Filed 06/04/25   Page 11 of 13   Page ID #:216

## D.    PLAINTIFFS STATE CLAIMS IN CAUSES OF ACTION SIX AND SEVEN FOR MISREPRESENTATION

### 1.    Applicable Law

To state an intentional misrepresentation claim, a plaintiff must plead with particularity (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004); see also Hernandez v. Nissan N. Am., No. EDCV 23-0144-AB-SPx, 2023 WL 3806377, at *3 (C.D. Cal. Mar. 29, 2023). Further, an allegedly fraudulent omission is actionable only if the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Daugherty v. Am. Honda Motor Co., 144. App. 4th 824, 835 (2006). "California courts have generally rejected a broad obligation to disclose[.]" Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012).

Under California law, to establish a claim for negligent misrepresentation, a plaintiff must show (1) a misrepresentation, (2) intent to defraud, (3) justifiable reliance, and (4) resulting damage. Ives v. Allstate Ins. Co., 520 F. Supp. 3d 1248, 1257 (C.D. Cal. 2021) (citing Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices, 207 Cal. App. 3d 1277, 1285 (1989)). Specifically, a plaintiff need not establish knowledge of falsity, rather, "it is sufficient to allege the defendant lacked reasonable grounds to believe the representation was true." Real v. Y.M.I. Jeanswear, Inc., No. EDCV-17-0870-JGB-DTBx, 2017 WL 11675686, at *5 (C.D. Cal. Sept. 1, 2017).

### 2.    Analysis

Here, Plaintiffs sufficiently state claims for negligent and intentional misrepresentation.

Defendant argues because "the Products' ingredient statement disclosed their ingredient," including the citric acid, there is no "intentional misrepresentation." Mot. at 29. However, Plaintiffs proffer a theory of fraud by omission. Specifically, Plaintiffs allege "Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including that the Product contains an artificial flavor and preservative ingredient called citric acid, despite the Product's 'No artificial flavors' and 'No artificial preservatives' advertisement." Compl. ¶ 119.

As alleged in the Complaint, the front label of the Product "prominently states that the Product contains 'No artificial flavors' and 'No artificial preservatives'", id. ¶ 14, however, the Product contains citric acid, "an artificial flavoring and preservative ingredient", id. ¶ 16. Further, Plaintiffs allege they relied on the representations of the Product because they "would not have purchased Defendant's Product, or would have paid less for the Product, if they had known the Product actually contains an artificial flavoring and preservative ingredient." Id. ¶ 40. Thus, Plaintiffs sufficiently allege fraudulent omission because the omission of the alleged nature of citric acid in the Product is contrary to the representation made in the front label of the Product. See Augustine v. Talking Rain Beverage Co., Inc., 386 F. Supp. 3d 1317, 1331-32 (S.D. Cal. 2019) (finding the complaint adequately alleged the products were not what they purported to be because the plaintiffs adequately alleged the defendant "deliberately intended to give consumers the false

impression that the Products are composed only of natural flavors and contain no artificial colors or flavors" when the product also allegedly contains artificial flavor, d-1-malic acid); see also Ringler, 2025 U.S. Dist. LEXIS 91200, at *15.

Further, to the extent Defendant argues Plaintiffs' claim for negligent misrepresentation under Cause of Action Six should be dismissed, the Court finds Plaintiffs have sufficiently stated a claim.  First, Plaintiffs allege in detail Defendant represented the Product to be "No artificial flavor" and "No artificial preservatives", while the Product contains artificial citric acid.  Compl. ¶¶ 14, 16. Second, the Court finds Plaintiff relied on the Product's representation and purchased the Product, resulting in damage.  See Section IV.A.2.a.  Third, Plaintiffs also allege "Defendant knew that consumers would pay more for a product if they believed it was free from artificial flavors and preservatives."  Compl. ¶ 122.  As discussed above, the Court finds Plaintiffs have sufficiently alleged the citric acid contained in the Product is artificially manufactured.  See Section IV.B.2.a. Thus, the Court finds Plaintiffs sufficiently allege a claim for negligent misrepresentation. Augustine, 386 F. Supp. 3d at 1331 (finding the plaintiffs adequately stated a claim for negligent misrepresentation because the plaintiffs adequately alleged "Defendant had knowledge that the Products contained artificial flavors while representing that they were all natural" and that the plaintiffs relied on the misrepresentation to their detriment).

Accordingly, the Motion is **DENIED** as to Plaintiffs' Causes of Action Six and Seven.

## E.    PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF FAILS TO STATE A CLAIM

### 1.    Applicable Law

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."  TransUnion LLC v. Ramirez, 594 U.S. 413, 435 (2021).  To demonstrate standing for claims seeking injunctive relief, a plaintiff must allege: (1) a concrete injury and (2) a realistic likelihood that the injury will be repeated.  Taylor v. Westly, 488 F.3d 1197, 1199 (9th Cir. 2007); see also Owens v. Smith, Gambrell & Russell Int'l, LLP, No. CV 23-01789-JAK-JDEx, 2024 WL 3914663, at *7 (C.D. Cal. May 30, 2024).

### 2.    Analysis

Here, the allegations in the Complaint are insufficient to demonstrate there is a realistic likelihood that the injury would be repeated.  Plaintiffs allege they "desire[] to, and would, purchase the Product again if the label of the Product was accurate and if the Product truthfully contained only "No artificial flavors" and "No artificial preservatives."  Compl. ¶ 13.  Further, Plaintiffs allege "as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Product's labeling when deciding in the future whether to purchase the Product."  Id.  However, courts in this circuit have ruled plaintiffs lack Article III standing to seek injunctive relief when they could verify whether a product contains citric acid simply by examining its label, as they cannot demonstrate a realistic likelihood of repeated injury.  See Squeo, 2024 WL 4557680, at *8 (finding there is no risk that the plaintiffs will be deceived again because the plaintiffs "now know to check the ingredients list on the packaging to determine if Defendants added citric acid to the [Product]."); see also

Ringler, 2025 U.S. Dist. LEXIS 91200, at *28 (finding the "[p]laintiff can easily determine whether the Products contain citric acid by simply looking at the ingredients label.").

Thus, the Court finds Plaintiffs lack standing to seek injunctive relief.  Accordingly, the Motion is **GRANTED** as to Plaintiffs' request for injunctive relief.

## F.    PLAINTIFFS' REQUEST FOR LEAVE TO AMEND IS DENIED

### 1.    Applicable Law

A court should freely grant leave to amend a complaint dismissed for failure to state a claim. Fed. R. Civ. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

### 2.    Analysis

Here, the Court finds an amendment would be futile because "Plaintiffs cannot plead around their inability to be deceived again without fundamentally changing their allegations."  Squeo, 2024 WL 4557680, at *8 (citation omitted).  Accordingly, Plaintiffs' request for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND**.

### V.
### CONCLUSION

For the reasons set forth above, the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Defendant's request for dismissal of the Complaint for lack of standing is **DENIED**;

2.    Defendant's request for dismissal of Plaintiffs' Causes of Action One through Seven is **DENIED**;

3.    Defendant's request for dismissal of Plaintiff's request for injunctive relief is **GRANTED**, and Plaintiff's request for injunctive relief is **DISMISSED without leave to amend**.

4.    Defendant shall file an Answer no later than **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED**.